ORIGINAL

FILED
JAN 8 2008
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURCHICK CONSTRUCTION COMPANY, INC., | : | Civil Action No. |
| Plaintiff, | : | |
| v. | : | 08-15 C |
| THE UNITED STATES [redacted] | : | |
| Defendant. | | |

**COMPLAINT**

AND NOW comes Plaintiff, Burchick Construction Company, Inc. ("Burchick"), by and through its undersigned counsel, and hereby sets forth its Complaint in Civil Action against the United States Department of Veterans Affairs, National Cemetery Administration (the "VA"), and in support thereof avers as follows:

**Parties & Jurisdiction**

1. Burchick is a Pennsylvania Corporation with its primary place of business at 500 Lowries Run Road, Pittsburgh, Pennsylvania, 15237.

2. The VA is a duly constituted agency of the United States government.

3. Burchick's claims hereunder arise under the Contract Disputes Act, 41 U.S.C.A. § 601 *et. seq.* This Court has jurisdiction over such claims under 28 U.S.C. §§ 1491 (a)(1) and (2).

**Factual & Procedural Background**

4. On March 15, 2006, the VA issued a Solicitation, Offer and Award (the "Solicitation") for Phase I work at the Cemetery of the Alleghenies located in Bridgeville,

Pennsylvania (the "Project"). The Solicitation is incorporated by reference herein. The VA has a copy of the Solicitation and due to its voluminous nature, the Solicitation is not attached hereto.

5. Pursuant to the page 1442-1 of the Solicitation, the work on the Project consisted of the following: "site preparation and erosion control; earthwork; grading surface and subsurface drainage; roads and pedestrian paving; columbarium niches; preparation of gravesites for crypts, excavation; crypt placement; backfilling; drainage improvements; landscape planting and turf; signage and site furnishings; irrigation systems; utilities; three committal service shelters; public information center building; administration and maintenance complex."

6. As part of the Solicitation, potential contractors were required to "provide a price for rock removal so that if the quantities [varied] from the base amount, a basis for future adjustments ha[d] been established." Solicitation, page 1442-3.

7. The Specifications to the Solicitation defines "Rock Excavation" as, "Removal and disposal of solid, homogeneous, interlocking crystalline material firmly cemented, laminated, or foliated masses or conglomerate deposits that cannot be dislodged and excavated with a late-model, track-mounted loader; rated at not less than 157 kW (210 hp) flywheel power and developing a minimum of 200 kN (45,000 lbf) breakout force; measured according to SAE J-732." Specifications, General Requirements, Section 02200, at § 1.5(B)(2). (The Specifications are incorporated by reference herein. The VA has a copy of the Specifications and due to their voluminous nature, the Specifications are not attached hereto.)

8. In the Solicitation, the VA specified that the estimated quantity of rock that was necessary to be removed was 100 cubic yards. Solicitation, page 1442-3.

9. In response the Solicitation, Burchick submitted a bid to the VA in which Burchick specified that it would perform rock removal at a cost of $45.00 per cubic yard.

10. On or about July 28, 2006, Burchick was awarded Contract No. VA786A-C-0021 (the "Contract"). The Contract is incorporated by reference herein. The VA has a copy of the Contract, so the Contract is not attached hereto.

11. The Specifications, the Solicitation, and Burchick's bid were incorporated into the Contract.

12. The Contract was a Firm-Fixed Price contract.

13. In the process of performing the rock excavation, Burchick encountered certain material that it could not dislodge and excavate with a late-model, track-mounted loader rated at not less than 157 kW (210 hp) flywheel power and developing a minimum of 200 kN (45,000 lbf) breakout force; measured according to SAE J-732.

14. Therefore, pursuant to the defined terms of the Contract, the excavation of this material is "Rock Excavation."

15. The VA claimed that this material did not meet the definition of "Rock Excavation" but instead was a differing condition because it was not noted on the Subsurface Investigation, and issued a Change Order COCO A on December 19, 2006. The VA began to refer to the material as "orange-yellow material."

16. The Subsurface Investigation is not incorporated into the Contract. Specifications, General Requirements, Section 01010, at § 1.9(B).

17. On the VA issued Change Order COCO A applied to the orange-yellow material, and directed Burchick to "provide quantity and location of rock certified by a licensed Surveyor in order to negotiate a supplemental agreement for this change order."

18. In the process of performing the rock excavation, Burchick also encountered a gray claystone material, which it also could not dislodge and excavate with a late-model, track-mounted loader rated at not less than 157 kW (210 hp) flywheel power and developing a minimum of 200 kN (45,000 lbf) breakout force; measured according to SAE J-732.

19. Therefore, the gray claystone material also meets the definition of "Rock Excavation" under Specification Section 02200, at § 1.5(B)(2).

20. The VA disagreed with Burchick's characterization of the gray claystone material, arguing this material was outlined in the Geotechnical Report, such that Burchick should have considered it when it prepared its Specifications, even though the Geotechnical Report is not a part of the Contract Documents. Specifications, General Requirements, Section 01010, at § 1.9(B).

21. The VA then issued Change Order COCO B on January 25, 2007, which directed Burchick to remove the gray claystone material with the use of a D8 Tracked dozer with ripper attachment.

22. To date, Burchick has excavated approximately 22,164 cubic yards of materials that meets the definition of "Rock Excavation."

23. Under the Contract and Specifications, Burchick is entitled to $45 per cubic yard for all Rock Excavation.

24. The VA has refused to compensate Burchick at the contractual price of $45 per cubic yard for the amount of rock excavated in excess of 100 cubic yards.

25. Due to the VA's failure to honor its contractual obligations, on January 26, 2007, Burchick submitted, via certified mail, a properly certified claim (the "Claim"). The Claim is attached hereto as Exhibit "A" and is incorporated by reference.

26. On April 2, 2007, over sixty days after Burchick submitted the Claim, the Contracting Officer responded to the Claim, but did not provide a final decision or a provide a time when a final decision would be made on the Claim (the "April 2, 2007 Letter"). A true and correct copy of the April 2, 2007 Letter is attached hereto as Exhibit "B" and incorporated by reference.

27. Instead, the Contracting Officer stated that more information was necessary before it could render a final decision.

28. Since no decision was made or a time given when a decision would be made, the Claim is deemed denied and, therefore, the April 2, 2007 Letter is a final decision.

29. By letter dated April 17, 2007, Burchick informed the VA that it was treating the April 2, 2007 Letter as a final decision and preparing to appeal.

30. Consequently under 41 U.S.C.A. § 609, Burchick is entitled to appeal the VA decision to this Court.

**COUNT I**
**Breach of Contract**

31. Paragraphs 1 through 30 are incorporated by reference.

32. Under the express terms of the Contract, the price of $45 per cubic yard that Burchick provided for rock removal was intended to be used as a basis if the actual amount of rock removed varied from the VA's estimate.

33. The VA estimated the amount of rock removal would be 100 cubic yards.

34. Burchick has, to date, excavated approximately 22,164 cubic yards of rock which consists of both the orange-yellow material and gray claystone material.

35. Both the orange-yellow material and the gray claystone material meet the definition of "Rock Excavation" under the Contract.

36. Under the express terms of the Contract, Burchick is entitled to $45 per cubic yard for all "Rock Excavation" performed under the Contract.

37. The VA has breached the Contract by refusing to pay Burchick $45 per cubic yard for the 22,164 cubic yards of rock it has, to date, excavated beyond the 100 cubic yards provided for in the Contract.

38. By reason of the VA's breach, and as a direct and proximate result thereof, Burchick has suffered substantial damage and harm, which includes, but is not limited to, the additional labor, material, and equipment costs along with surveys and the on-site solids inspection the VA required of Burchick and all other costs incurred by Burchick that were not required under the terms of the Contract, but for which Burchick incurred expenses.

**WHEREFORE**, Burchick respectfully requests that this Court enter judgment in its favor and against the VA in an amount in excess of $100,000.00, plus interest, costs, attorneys' fees, and any other relief this Court deems just and appropriate.

**COUNT II**

**Breach of the Covenant of Good Faith and Fair Dealing**

39. Paragraphs 1 through 38 are incorporated by reference.

40. The Contract, as with all contracts, contains an implied covenant of good faith and fair dealing.

41. The VA breached this covenant by imposing obligations on Burchick that were beyond the scope of Burchick's contractual duties.

42. By electing to include a unit price for additional rock excavation in the Contract, the VA was obligated to compensate Burchick for any additional rock excavation based on that unit price and the VA has breached it duty of good faith and fair dealing by attempting to impose additional obligations on Burchick regarding its additional rock excavation that are not contained anywhere in the Contract.

**WHEREFORE**, Burchick respectfully requests that this Court enter judgment in its favor and against the Government in an amount in excess of $100,000.00, plus interest, costs, attorneys' fees, and any other relief this Court deems just and appropriate.

Dated: January 7, 2008

Respectfully submitted,

BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.

By: ______________________

D. Matthew Jameson III, Esquire
PA ID No. 67764
Patrick R. Malone, Esquire
PA ID No. 206479
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
412-394-5400
412-586-1078
mjameson@bccz.com

# EXHIBIT A

BCCZ

BABST | CALLAND | CLEMENTS | ZOMNIR
A PROFESSIONAL CORPORATION

D. MATTHEW JAMESON III
Attorney at Law
T 412.394.5491
mjameson@bccz.com

January 26, 2007

***Via Federal Express and E-mail***

Ms. Diane Campbell
VA National Cemetery Administration
Construction Support Division (41D3B)
810 Vermont Avenue, NW
Washington, DC 20420

Re: National Cemetery of the Alleghenies (the "Project")
VA Project No. 925-001
Burchick Job No. 06-011

Dear Ms. Campbell:

Please be advised that my law firm represents Burchick Construction Company, Inc. ("Burchick") with respect to the above-referenced project. I am writing in response to the January 19, 2007 letter and Central Office Change Order A (COCO-A) issued by Michael J. Hannum of your office. Pursuant to FAR 52.233-1 (Disputes), this letter shall constitute Burchick's claim for compensation regarding the rock excavation issue on this project. Because this claim exceeds $100,000.00, as required by FAR 52.233-1, and pursuant to authorization given to me by Burchick, I certify that this claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; and that the amount requested accurately reflects the contract adjustment for which Burchick believes the Government is liable.

To briefly summarize Burchick's position – the contract that Burchick and the Department of Veterans Affairs ("VA") have entered into clearly provides that Burchick is to be compensated for all rock excavation in excess of 100 cubic yards at the price of $45 per cubic yard. Specifically, Sub-Section 1.5 (B) (2) of Section 02200 of the Project Specifications defines the rock at this site as classified excavation for which Burchick is to be paid $45 per cubic yard. Furthermore, page 1442-3 of bid documents (which are part of the contract documents) states that this $45 per cubic yard price is to "establish" "a basis for future adjustments" if quantities of rock removal exceed the base amount of 100 cubic yards set forth in the contract.

Therefore, our claim is for compensation pursuant to these contractual provisions. Based on Burchick's current best estimate of quantities (which is based on the revised plans (SK-1) prepared by the VA) is that 22,423 cubic yards of rock excavation in bulk excavation will be required on the site, which will mean that Burchick is entitled to the following compensation: (22,423 cubic yards – 100 cubic yards included in base contract) x ($45 per cubic yard) = $1,004,535.00. (Please note that this quantity only relates to the bulk open excavation, and does not include any quantities for trenches and/or pits, for which we will also be entitled to compensation at the rate of $45 per cubic yard.) The remainder of this letter will provide you with additional details regarding our position.

Based on COCO-A, the VA apparently views a portion of the rock at this site to be a "differing site condition," despite the fact that the VA has previously stated that the rock at the site is "commonly found in this part of the country." In addition, the VA is now attempting to draw a distinction between "the yellow/orange material" which the VA states is covered by COCO-A and "the gray colored material identified as clay stone in the Geotechnical Report" which the VA states "should be removed using conventional earth moving equipment." There is simply no basis whatsoever in the contract between the VA and Burchick to draw a distinction between these two allegedly different types of rock. To the contrary, the contract simply uses an equipment-based definition of classified rock and both of the allegedly different types of rock identified by the VA fall under the definition of classified rock. Therefore, Burchick is hereby claiming entitled to be compensated on the contractual basis of $45 per cubic for each and every cubic yard of classified rock that is excavated beyond the 100 cubic yards provided for in the contract.

Burchick has grown increasingly frustrated with the manner in which the VA has dealt with this issue. For example, the VA requested that Burchick provide the VA with Burchick's anticipated quantities for excavation and encouraged Burchick to submit a lump-sum proposal to handle all excavation on the project (moving the risk for quantity overages from the VA to Burchick). Thereafter, on January 10, 2007 Burchick did in fact submit its anticipated quantities and a proposal to assume responsibility for all excavation work for $668,708.00, which obviously represents a large discount from the contractual unit price amount for classified excavation that Burchick is entitled to. Burchick and representatives of the VA then met on January 19, 2007, to discuss this issue and Burchick was shocked to see the VA completely backtrack from the concept that the VA previously endorsed and instead issue COCO-A – a unilateral change for "NOT TO EXCEED $150,000.00" with directions to Burchick to proceed with excavation and to "provide a detailed cost proposal for this additional work," despite the fact that Burchick has already submitted just such a proposal on January 10, 2007. Please note that under revised drawing SK-1, Burchick's estimated total quantities (for all rock excavation, not just open bulk excavation) would be 26,270 cubic yards, which would compute to a revised offer of $571,513.00. Assuming that Burchick is comfortable with the revised drawings that are to be issues today, Burchick would still be willing to assume responsibility for all excavation work for this amount of additional compensation.

Pursuant to the direction in COCO-A, Burchick has already resumed excavation work at the site and will continue to diligently perform. Unless the VA accepts Burchick's previous offer to assume responsibility for all excavation work for an additional $668,708.00, Burchick will insist on strict application of the contractual terms and will aggressively pursue its entitlement to $45 per cubic yard for all classified rock excavation in excess of the 100 cubic yards provided for in the contract.

In addition, the 14 day extension provided for in COCO-A is unreasonably short. Increasing rock excavation from 100 cubic yards to an estimated 27,277 cubic yards will obviously take significantly longer than 14 days. Per the direction of the VA, Burchick has been prohibited from working in the administration pad area of this project (which is on the critical path of the schedule) from December 8, 2006 through January 21, 2007, which is a direct six-week impact on critical path of the project schedule. The actual days incurred in performing this work will be tracked and Burchick will request an extension of time equal to this time period.

Finally, Burchick will also comply with the VA's direction in COCO-A that Burchick "provide quantity and location of rock certified by a licensed Surveyor in order to negotiate a supplemental agreement for this change order." Burchick, however, is also claiming entitlement to compensation for the costs incurred by Burchick (including appropriate mark-up for overhead and profit) associated with this surveyor, which is not required under the contract documents. While we acknowledge that Section 01010-1.10 of the Project Specifications requires that Burchick provide a Registered Land Surveyor, this section only requires that the surveyor perform work required in the Project Specifications. Section 02200-1.6 does not, contrary to the implication in COCO-A, require that this surveyor provide quantity and location of rock. While we obviously recognize that it is our obligation to prove the quantities of rock that Burchick actually excavates, we do not need an on-site licensed Surveyor to do this, so if the VA is ordering us to provide this, we expect to be compensated for this additional obligation.

If you or counsel for the VA would like to discuss this matter, please contact me. Otherwise, pursuant to the applicable to 41 U.S.C. § 605 and FAR 52.233-1, we will await your decision within the next sixty (60) days. Thank you for your attention to this matter.

Very truly yours,

D. Matthew Jameson III

DMJ/vlc
cc: Mr. Joseph E. Burchick
Mr. James Huber

# EXHIBIT B

RECEIVED
APR - 3 2007

DEPARTMENT OF VETERANS AFFAIRS
National Cemetery Administration
Construction Support Division (41D3B)
810 Vermont Avenue, NW, Washington, DC 20420

April 2, 2007 In Reply Refer To: 41D3B

Mr. D. Matthew Jameson III
BCCZ
Two Gateway Center
Pittsburgh PA 15222

Dear Mr. Jameson:

This is in response to letters of January 26, and January 31, 2007, concerning your client, Burchick Construction Co Inc (Burchick).

According to FAR 52.233-1 the Contracting Officer must provide a Contracting Officer's Final Decision or notify the Contractor of the date by which the decision will be made. To satisfy that requirement the Contracting Officer needs enough information from your client, in order to make an informed decision. In the meantime I would like to offer the following as the position that we have taken, and some of the reasons for that position.

The VA disagrees that the contractor is entitled to $45 per Cubic Yard (45/CY) for all volumes of rock in excess of the 100 CY. The volume of material involved exceeds the bid quantities by more than 220 times this amount. Based on previous decisions, whenever the actual volumes at issue exceed the contractually stated volumes, the Government has the right to expect to negotiate the cost of removal at a price that is fair and reasonable, and closer in line with costs incurred.

As early as one week after encountering the material at issue the contractor was directed to accurately identify the type of material and the volume that was being encountered. It was for this purpose of verifying the material encountered to compare against the boring logs. As of this writing Burchick has not complied with this direction.

Central Office Change Order A (COCO A) was issued on 1/18/07. This change order recognized the differing site condition of the orange/yellow limestone that was not noted on the Boring logs shown on drawing B-1.7, nor was it identified in the Geotechnical Engineering Report. Because this was not identified on the boring logs, the VA has agreed since December 8, 2006, that this was a differing

site condition. By the issuance of COCO A, the contractor has been paid a fair and reasonable price for the extra handling and on-site disposal of the material. The VA estimate used to prepare this COCO was based on equipment rental rates from a local equipment supplier. Labor and man-hours were based on what was documented by the Resident Engineer (R/E) and the VA-retained testing and inspection laboratory, and these figures were also corroborated by the contractor's daily logs.

The grey claystone material addressed under COCO B, was accurately identified in the referenced boring logs and in the geotechnical report. The VA has consistently said this was not a differing site condition because it was accurately noted in the bid documents. The VA issued COCO B because we recognized the need for additional equipment and manpower, due to the extra operation of ripping and loading the material into trucks. COCO B also directed the means of removing the rock, which is the VA's contractual right. In so doing we recognized the extra operation and fairly compensated the contractor for this. The R/E and the VA testing lab accurately tracked equipment, manpower, and work activities throughout this process. This has all been verified by the daily logs submitted by Burchick. You should note that in preparing the estimate of the value of COCO B, the VA used a unit cost of $18 per cubic yard. This unit cost is substantially higher than any unit cost per cubic yard for any excavation undertaken by the contractor.

The claystone as defined in the Geotechnical Engineering Report and Test Boring Logs is a bedrock material. The Test Boring Logs are part of the Contract Documents sheet B-1.7 and the Geotechnical Engineering Report which was part of the bid package provided to the Contractor on March 27, 2006, for his use in preparing a bid for the project.

As part of the Geotechnical report:

> Section 2.4
> "All of the test borings were extended to refusal on bedrock. CEC defines refusal as the depth at which 50 blows or more are required to drive the sampling spoon 6 inches or less. Rock core samples were obtained from several test borings after the split-spoon refusal."

A graphic representation at the right hand column of the test boring logs B-101, B-102, B-103, B-104, B-105 and B-106 shows the soil density taken in the area of the Maintenance and Administration Buildings. The logs also show the depth to bedrock in this area and provide a description of the bedrock, including hardness.

> Section 3.4
> "Claystone Bedrock will be encountered in bulk excavation to grade the pad in the area of the proposed Maintenance Building and in excavation for

foundations and site utilities. Excavation of the weathered claystone bedrock sampled to grade the site and for foundations and utility trenches is anticipated to be possible with conventional heavy earthmoving equipment. Claystone bedrock will be exposed in the excavated slope in the vicinity of Test Boring B-103."

The claystone bedrock as defined in the Geotechnical Engineering Report and identified on the Test Boring Logs does not constitute a differing site condition and should have been accounted for in the Contractors Base Bid. The Contractor has excavated the bulk claystone bedrock material with "heavy earthmoving equipment" starting on January 22, 2007, and completed preparation for the administration building by February 14, 2007.

In summary the Department of Veteran affairs has allocated $362,796.00 to account for additional excavation from December 4, 2006, thru March 2, 2007. The actual amount of equipment, materials, fuel, and labor expended for rock excavation through the above referenced period will be audited, including profit and overhead.

The Department of Veterans Affairs did monitor the excavation that was required to complete the work in the area of the Administration and Maintenance Buildings. Now we need to see Burchick's quantities and associated costs, so that we may make a comparison. Due to the potential dollar amount of this issue, it may also be necessary to schedule a DCAA audit. In order for that to take place, it is imperative that we have a detailed proposal. In accordance with FAR 52.243-4 Changes, the contractor is required to submit a proposal upon receipt of a written change order within 30.

We look forward to concluding this issue in a manor that is amicable to both parties. If you have any questions, please contact me at 202-565-4220 or Michael Hannum at 202-565-4056.

Respectfully,

Diane L. Campbell

Diane L Campbell
Contracting Officer

cc : James Huber; Burchick Construction
Michael Hannum; Administrative Contracting Officer
Mark Ivory; Project Manager
Robert Rowland; Resident Engineer
Marty Hartman; MTR A/E

# EXHIBIT C

BCZ

BABST | CALLAND | CLEMENTS | ZOMNIR
A PROFESSIONAL CORPORATION

D. MATTHEW JAMESON III
Attorney at Law
T 412.394.5491
mjameson@bccz.com

April 17, 2007

***Via Federal Express and Electronic Mail***

Ms. Diane Campbell
VA National Cemetery Administration
Construction Support Division (41D3B)
810 Vermont Avenue, NW
Washington, DC 20420

Re: National Cemetery of the Alleghenies (the "Project")
VA Project No. 925-001
Burchick Job No. 06-011

Dear Ms. Campbell:

This letter is sent in response to your letter dated April 2, 2007, in which you state that you need a detailed proposal from our client, Burchick Construction Company, Inc. ("Burchick"), prior to rendering a decision on the claim submitted by Burchick through my letter dated January 26, 2007 (the "Claim").

Burchick treats your April 2, 2007 letter as a final decision on the Claim, and will be filing a complaint pursuant to the procedures outlined in the Contract Disputes Act. Pursuant to FAR 52.233-1(e) a contracting officer must, within sixty (60) days, decide the claim or notify the Contractor of the date by which the decision will be made. Your April 2, 2007 letter (1) was sent after the 60 day deadline, (2) failed to decide the Claim, and (3) failed to state when the Department of Veterans Affairs ("VA") would be making a final decision on the Claim. The VA's failure to make a final decision within sixty days or provide a date for when a final decision would be made allows Burchick to treat its claims as denied and appeal the denial. *E.g.*, *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1302 n.2 (Fed. Cir. 1996); *Logicvision, Inc., v. United States*, 54 Fed. Cl. 549, 551 (2002).

Furthermore, even though your April 2, 2007 letter is not labeled a final decision, you have thoroughly outlined your position, such that this letter is deemed a final decision. *E.g.*, *Litton Sys., Inc. v. United States*, 27 Fed. Cl. 306, 309 (1992) (stating the focus of the inquiry is on the content of the writing, the circumstances that prompted the writing, and the conclusiveness of the position the writing intends to convey). Your letter sets forth your reasons for disagreeing with Burchick's Claim, the letter was in written in response to the Claim

submitted by Burchick, and the letter establishes the amount to which you believe Burchick is entitled.

Regarding the VA's request for a "proposal," my January 31, 2007 letter contained such a proposal which the VA has apparently rejected even though it never responded to the proposal. Burchick will not respond further to this new request.

Prior to filing a complaint on behalf of Burchick, we did want to address several points of disagreement that Burchick has with the VA regarding positions taken by the VA in your April 2, 2007 letter.

First, Burchick fundamentally disagrees with your statement that "[b]ased on previous decisions, whenever the actual volumes at issue exceed the contractually stated volumes, the Government has the right to expect to negotiate the cost of removal at a price that is fair and reasonable, and closer in line with costs incurred." The only decisions that Burchick is aware of regarding this issue are based entirely on FAR Subpart 11.7 – Variation in Quantity, which the VA did not incorporate into this Contract. Furthermore, this provision cannot be read into the Contract under *G.L. Christian & Assoc. v. United States*, 312 F.2d 418, *reh'g denied*, 320 F.2d 345, *cert. denied*, 375 U.S. 954 (1963) (creating the "*Christine Doctrine*"), because this provision is not mandatory. Instead of including this provision, the VA made a conscious decision to include a unit price for all classified excavation in the Contract. Specifically, Sub-Section 1.5 (B) (2) of Section 02200 of the Project Specifications defines the rock at this site as classified excavation for which Burchick is to be paid $45 per cubic yard for all rock excavation in excess of 100 cubic yards. Furthermore, page 1442-3 of bid documents (which are part of the Contract Documents) states that this $45 per cubic yard price is to "establish" "a basis for future adjustments" if quantities of rock removal exceed the base amount of 100 cubic yards set forth in the contract.

Second, your statement that Burchick has failed to comply with the VA's direction to "accurately identify the type of material and the volume that was being encountered" is simply wrong. Burchick has confirmed (as witnessed by representatives of the VA) that the material being excavated met the Contract's definition of classified excavation and Burchick has maintained accurate records of the volume of material that was excavated.

Third, your entire discussion regarding the Geotechnical Report and the alleged "differing site condition" is completely irrelevant. The Geotechnical Report is not part of the Contract Documents; in fact, the Project Specifications specifically state that the Geotechnical Report "shall not be considered part of the contract documents." Instead, the Contract simply uses an equipment-based definition of classified rock and both of the allegedly different types of rock identified by the VA fall under the definition of classified rock. Therefore, Burchick is simply claiming that it is entitled to be compensated on the contractual basis of $45 per cubic yard for each and every cubic yard of classified rock that is excavated beyond the 100 cubic yards provided for in the Contract.

Because the quantities set forth in the Claim were, by necessity, estimates, we are now revising our claim for bulk excavation to the actual quantity excavated to date as follows: (22,164 cubic yards – 100 cubic yards included in base contract) x ($45 per cubic yard) = $992,880.00. In addition, as noted in the Claim, Burchick is entitled to be compensated for the additional requirements that the VA has unilaterally imposed regarding this work, namely the additional surveys by Hampton Engineers ($1,461.00) and the on-site soils inspection by ACA Engineers ($10,900.00). Therefore, the total amount of Burchick's claim to date is $1,005,241.00. Please note that this does not include any additional compensation that Burchick is entitled to for structural excavation or for any remaining bulk excavation. Burchick reserves the right to revise its claim to reflect all appropriate excavation quantities.

Fourth, Burchick disagrees with the VA's statements regarding the conducting of a DCAA audit. Because the Contract provides for a per cubic yard price for classified excavation, Burchick is under no obligation to submit a proposal or any other cost information regarding this excavation. As soon as the VA verifies the quantities which Burchick has excavated, the VA is obligated to pay Burchick $45 per cubic yard of those quantities. No further "audit" is contractually permitted.

Finally, Burchick expresses its continuing frustration with the manner in which the VA has handled this matter. While Burchick's position has been clearly articulated throughout the course of this dispute, the VA has yet to indicate any contractual basis for disagreeing with Burchick's position. Instead, the VA has consistently referred to FARs and boring logs which are not part of the Contract. While your letter concludes by indicating that the VA would like to amicably resolve this matter, the VA's actions in refusing to address the terms of the Contract and in failing to respond to Burchick's offer of settlement indicate exactly the opposite. Therefore Burchick will be filing a complaint with Federal Court of Claims in the near future.

If you or counsel for the VA would like to discuss this matter, please contact me.

Sincerely,

D. Matthew Jameson III

DMJ/vlc

cc: Mr. Joseph E. Burchick
Mr. James Huber
Ms. Candace Wood