No. 08-15C
(Judge Horn)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BURCHICK CONSTRUCTION COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**BURCHICK'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

BABST, CALLAND, CLEMENTS and ZOMNIR, P.C.
D. Matthew Jameson III, Esquire
PA ID No. 67764
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
412-394-5400
412-586-1078
mjameson@bccz.com

May 28, 2008

Attorney for Plaintiff

# TABLE OF CONTENTS


PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT .....1

ISSUE PRESENTED .....1

STATEMENT OF THE CASE .....2

A. Nature of the Case .....2

B. Procedural History .....2

C. Statement of Facts .....2

ARGUMENT .....4

A. Summary of Argument .....4

B. Standard for Summary Judgment Under RCFC 56(c) .....5

C. The terms of the Contract are clear and unambiguous and as such Burchick is entitled to a judgment that it is entitled to compensation of $45 per cubic yard for the excavation of all "Open Excavation" rock .....6

1. The VA's attempt to seek an equitable adjustment creates an ambiguity where none exists and ignores the plain language of the Contract .....7

2. A variation in quantity of rock excavated from the Project is not a differing site condition .....7

3. To the extent there are inconsistencies under the Contract between provisions, the specific provision addressing cost of excavating additional materials meeting the definition of Rock excavation governs the Contract .....10

CONCLUSION .....12

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................5

*Baltimore Contractors, Inc. v. United States*, 12 Cl. Ct. 328 (1987)........................................8

*Burnett Construction Co. v. The United States*, 26 Cl. Ct. 296 (1992)........................................9

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ........................................5

*CEMS, Inc. v. United States*, 59 Fed. Cl. 168 (2003) ........................................8

*Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298 (Fed. Cir. 1996)........................................10

*G.L. Christian & Associates v. United States*, 160 Ct.Cl. 1 (1963)........................................9

*Golden Pacific Bankcorp v. United States*, 15 F.3d 1066 (Fed. Cir.1994)........................................5

*Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990 (Fed Cir. 1996)........................................5

*Hills Materials Co. v. Rice*, 982 F.2d 514 (Fed. Cir. 1992)........................................10

*Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002).................

*In re Parker Excavating, Inc.*, 2006 WL 533446 (Armed Serv. B.C.A. 2006) ........................................8

*Lambrecht & Sons, Inc.*, ASBCA No. 49515 (July 7, 1997)........................................9

*Larry D. Barnes, Inc. v. United States*, 45 Fed. Appx. 907 (Fed. Cir. 2002) ........................................5

*Martin v. United States*, 20 Cl. Ct. 738 (1990)........................................5

*Medlin Construction Group, Ltd. v. J. Harvey*, 449 F.3d 1195 (Fed. Cir. 2006) ........................................7

*Metric Constructors, Inc. v. NASA*, 169 F.3d 747 (Fed. Cir.1999)........................................6

*P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913 (Fed. Cir. 1984) ....................8

*Peckham v. United States*, 61 Fed.Cl. 102 (Fed. Ct. Cl. 2004)........................................6

*Perini Corp. v. United States*, 381 F.2d 403 (Ct. Cl. 1967)........................................7

**STATUTES**

Rules of the United States Court of Federal Claims Rule 56 ..........................................................5

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURCHICK CONSTRUCTION COMPANY, INC., | ) | |
| | ) | No. 08-15C |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**BURCHICK'S BRIEF IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), Plaintiff Burchick Construction Company ("Burchick"), by its undersigned counsel, hereby files the following Brief in Support of its Motion for Partial Summary Judgment:

## I. ISSUE PRESENTED

Whether the contract between the parties requires the Defendant United States Department of Veteran Affairs ("VA"), to pay Plaintiff Burchick $45 per cubic yard for all extra rock excavation performed on the project, or whether the contract entitles the VA to seek an equitable adjustment of the contract price for rock excavation performed in excess of the 100 cubic yard estimate provided by the VA in the solicitation. Joint Statement of Issues of Law ("JSL").

## II. STATEMENT OF THE CASE

### A. Nature of the Case

This matter involves a contract dispute between Plaintiff Burchick and the VA. Burchick is seeking payment for extra rock excavation performed under a contract entered into between the parties regarding the National Cemetery of the Alleghenies (the "Project"). The parties are in agreement that Burchick is entitled to payment under the contract for the additional rock excavation performed by Burchick, however, they disagree as to the manner of determining the VA's payment obligations. Burchick believes that the contract provides a unit price that should be applied to each additional cubic yard of rock that Burchick excavated from the Project. The VA argues that Burchick should be compensated for this additional rock excavation based on an equitable adjustment of the contract price based on Burchick's actual costs to excavate the additional rock.

### B. Procedural History

Burchick filed its Complaint in this action on January 7, 2008. On May 2, 2008, the parties complied with this Court's April 9, 2008 Order and filed a Joint Statement of Issues of Law and Joint Stipulation of Facts. Upon review of these pleadings, the Court ordered the parties to proceed with the filing and briefing of their respective cross-motions for partial summary judgment.

### C. Statement of Facts

On March 15, 2006, the VA issued a Solicitation, Offer and Award (the "Solicitation") for Phase I work at the Cemetery of the Alleghenies located in Bridgeville, Pennsylvania. Joint Stipulation of Facts ("JSF") ¶1. The Solicitation states, in pertinent part, that the work on the Project consisted of:

> site preparation and erosion control; earthwork; grading surface and subsurface drainage; roads and pedestrian paving; columbarium niches; preparation of gravesites for crypts, excavation; crypt placement; backfilling; drainage improvements; landscape planting and turf; signage and site furnishings; irrigation systems; utilities; three committal service shelters; public information center building; administration and maintenance complex.

JSF ¶2. The Solicitation also asked Burchick to provide a "price for rock removal so that if quantities vary from the base amount, a basis for future adjustments has been established." (emphasis added). JSF ¶3. As requested by the VA, Burchick bid a "Cost Per CY" of $45. JSF ¶4. Classified "Open Excavation" of rock under the solicitation (and ultimately under the contract) is defined as:

> Removal and disposal of solid, homogeneous, interlocking crystalline material firmly cemented, laminated, or foliated masses or conglomerate deposits that cannot be dislodged and excavated with a late-model, track-mounted loader; rated at not less than 157 kW (210 hp) flywheel power and developing a minimum of 200 kN (45,000 lbf) breakout force; measured according to SAE J-732.

("Rock Excavation") JSF ¶5. On July 17, 2006, the VA accepted Burchick's bid and on or about July 28, 2006, Burchick was awarded Contract No. VA786A-C-0021 (the "Contract"). JSF ¶7. The total Contract price was $14,144,000.00. A530

In the process of performing Rock Excavation, Burchick encountered certain materials that it could not dislodge and excavate with a late-model, track-mounted loader rated at not less than 157 kW (210 hp) flywheel power and developing a minimum of 200 kN (45,000 lbf) breakout force; measured according to SAE J-732. JSF ¶5, ¶11. Therefore, pursuant to the defined terms of the Contract, the excavation of this material is additional Rock Excavation. JSF ¶11. To date, Burchick has excavated several thousand yards of cubic yards of materials that meets the definition of Rock Excavation. JSF ¶11. Burchick has consistently maintained that it is entitled to $45 per cubic yard for the additional Rock Excavation. JSF ¶13. Pursuant to the terms of the Contract, Burchick has requested to be paid for 25,098 additional cubic yards of

Rock Excavation. At $45 per cubic yard, this represents a requested increase of $1,129,410, or an overall increase in the contract price of roughly eight (8%) percent.

In response to Burchick's request for additional compensation for this additional Rock Excavation, the VA maintained that the Contract only entitled Burchick to an equitable adjustment to the contract price. JSF ¶14. The VA issued Change Order COCO A on December 19, 2006 and Change Order COCOB on January 27, 2007. JSF ¶12. Rather than compensate Burchick according to the Contractual rate of $45 per cubic yard for additional Rock Excavation, the change orders issued by the VA required Burchick to "provide the quantity and location of rock certified by a licensed Surveyor in order to negotiate a supplemental agreement for this change order." A 536.

Due to the VA's failure to honor its contractual obligations, on January 26, 2007, Burchick submitted, via certified mail, a properly certified claim (the "Claim"). Complaint ¶25. On April 2, 2007, over sixty days after Burchick submitted the Claim, the Contracting Officer responded to the Claim, but did not provide a final decision or a provide a time when a final decision would be made on the Claim (the "April 2, 2007 Letter"). *Id.* ¶26.

Instead of ruling on Burchick's Claim, the Contracting Officer stated that more information was necessary before it could render a final decision. *Id.* ¶27. By letter dated April 17, 2007, Burchick informed the VA that it was treating the April 2, 2007 Letter as a final decision and preparing to appeal. *Id*. ¶29. In January 2008, Burchick filed the present action.

## III. ARGUMENT

### A. Summary of Argument

Pursuant to the clear and unambiguous terms of the contract, Burchick is entitled to payment of $45 per cubic yard for all Rock Excavation beyond the 100 cubic yards provided for

under the Contract. There is no dispute that the work performed by Burchick falls within the definition of Rock Excavation under the Contract. JSF ¶11. It is undisputed that the Contract provides for payment of $45 per cubic yard of additional Rock Excavation. JSF ¶¶4, 7. Finally, it is undisputed that the government intended the bid amount for Rock Excavation provided by Burchick to serve as a "basis for future adjustments." If the VA's position is adopted, the unambiguous term of the Contract regarding additional Rock Excavation is rendered meaningless.

### B. Standard For Summary Judgment Under RCFC 56(c)

Summary judgment in the United States Court of Federal Claims is appropriate when there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Golden Pacific Bankcorp v. United States*, 15 F.3d 1066, 1071 (Fed. Cir.1994). Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but only when there is a genuine issue of material fact. *Anderson*, 477 U.S. at 247-48. In this case, the parties have submitted, and the Court has accepted, a Joint Stipulation of Facts and Joint Stipulation of Issues related to this motion for partial summary judgment. *See* May 7, 2008 Order of Judge Horn. Thus, no issues of fact exist which would prevent the Court from granting this motion.

The interpretation of a government contract is a matter of law to be decided by the Court. *Larry D. Barnes, Inc. v. United States*, 45 Fed. Appx. 907, 908 (2002); *Grumman Data Sys. Corp. v. Dalton*, 88 F.3d 990, 997 (Fed Cir. 1996). Construction of an unambiguous writing,

therefore, is an appropriate matter for summary judgment. *Martin v. United States*, 20 Cl. Ct. 738, 745 (1990).

**C. The terms of the Contract are clear and unambiguous and as such Burchick is entitled to a judgment that it is entitled to compensation of $45 per cubic yard for the excavation of all Rock Excavation.**

The language and terms of the Contract between Burchick and the VA relating to Rock Excavation are simple, straightforward and unambiguous. When evaluating the meaning of contract terms, the language of the contract must be given the meaning that would be derived from the contract by a "reasonably intelligent person acquainted with the contemporaneous circumstances." *Metric Constructors, Inc. v. NASA*, 169 F.3d 747, 752 (Fed. Cir.1999). "When the terms of a contract are clear and unambiguous, there is no need to resort to extraneous circumstances for interpretation." *Peckham v. United States*, 61 Fed.Cl. 102, 107 (Fed. Ct. Cl. 2004).

The Contract between Burchick and the VA is clear and unambiguous. The intent of the parties was to enter into a contract for, among other construction services, all excavation meeting the definition of Rock Excavation as set forth in the Solicitation. JSF ¶¶2-5. The parties agreed upon a price for additional Rock Excavation, and in arriving at that price took into consideration the fact that the price agreed upon was also intended to serve as a "basis for future adjustments." A531. There is no dispute as to the type of work performed by Burchick as the parties agree that the excavation performed by Burchick meets the definition of Rock Excavation. JSF ¶11. Therefore, pursuant to the unambiguous terms of the Contract, Burchick is entitled to be paid $45 per yard for each additional cubic yard of rock that it excavated. [1]

[1] If this Motion for Partial Summary Judgment is granted, the only remaining issue is this case is how many additional cubic yards of rock Burchick excavated, and counsel for both Burchick and the VA expressed their belief to the Court that they can reach an agreement on this issue. Regardless, the quantity issue is not relevant to the Court's ruling upon the instant cross-motions for partial summary judgment.

**1. The VA's attempt to seek an equitable adjustment creates an ambiguity where none exists and ignores the plain language of the Contract.**

A contract must be construed as a whole and interpreted in such a way, where possible, as to give reasonable meaning to all terms of the writing. *Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1372 (Fed. Cir. 2002). This means that a reasonable contract interpretation must "assure that no contract provision is made <u>inconsistent</u>, <u>superfluous</u> or <u>redundant</u>." *Medlin Construction Group, Ltd. v. J. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (emphasis added).

The VA's position that Burchick is limited to an equitable adjustment in the contract price as a result of a mere change in quantity of Rock Excavation renders a key component of the Contract superfluous. As discussed above, Burchick provided a bid for Rock Excavation of $45 per cubic yard, as required by the government. JSF ¶¶3-4. Burchick provided this bid with the knowledge that the bid was to "form the basis for future adjustments." A531. During the Project, Burchick encountered additional quantities of material meeting the definition of Rock Excavation. Now, rather than abide by the terms the Contract the VA wants to ignore a term in the Contract that it drafted.

**2. A variation in quantity of rock excavated from the Project is not a differing site condition**

The VA appears to contend that the variation in rock quantity is a differing site condition which dictates an equitable adjustment to the contract price. The mere fact that Burchick excavated more rock than anticipated by the Contract, however, does not amount to a differing site condition. "Substantial variation from the estimated quantities, standing alone" is not "sufficient to establish the existence of a changed condition." *Perini Corp. v. United States*,

180 Ct. Cl. 768, 381 F.2d 403, 410-11 (Ct. Cl. 1967); *P.J. Maffei Building Wrecking Corp. v. United States*, 732 F.2d 913, 918 (Fed. Cir. 1984) (contractor's mistake in estimating the amount of salvageable steel not basis for invoking the Differing Site Conditions clause).

Differing site conditions are "[Type I] subsurface, latent, or physical conditions at the site materially different from those indicated in the contract or [Type II] unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract." 48 C.F.R. § 52.236-2.

Neither a Type I nor Type II differing site condition is present in this case. A Type I differing site condition is one that occurs when the physical conditions at the site differ materially from those indicated in the contract documents. *Baltimore Contractors, Inc. v. United States*, 12 Cl. Ct. 328, 333 (1987); *CEMS, Inc. v. United States*, 59 Fed. Cl. 168 (2003) (ruling that excess groundwater seepage at the project site was a Type I differing site condition).

Here the condition contemplated under the Contract is material that meets the definition of classified Rock Excavation. The type of material encountered by Burchick is the type specifically set out in the Contract. The material simply is not "differing."

A Type II differing site condition is one that is unknown and of an unusual nature that differed materially from conditions normally encountered. *See e.g. Baltimore Contractors, Inc.*, 12 Cl. Ct. at 335 (an undisclosed sewer line is a Type II differing site condition in a construction contract for an underground parking garage); *In re Parker Excavating, Inc.*, 2006 WL 533446 (Armed Serv. B.C.A. 2006) (granting contractor's Type II differing site condition claim for unusual and unknown buried pipe and debris). The Contract explicitly anticipates that there will be need for Rock Excavation and that there may be Rock Excavation needed that is beyond the

estimated quantities. The material encountered by Burchick cannot be said to be unknown, unusual, or out of the ordinary when it is the exact type of classified excavation material set forth in the Contract. If Burchick had, on the other hand, encountered an underground storage tank or some other undisclosed foreign object, the differing site conditions FAR would apply.

Burchick's position that mere variation in quantity does not amount to a differing site condition is bolstered by the fact that there is a government provision that can be incorporated into government contracts that deals explicitly with variations in estimated quantities. The VA decided not to incorporate into the contract FAR Subpart 11.7 regarding variations in quantity, including variations in estimated quantity ("VEQ FAR"). JSF ¶10.

The VEQ FAR "is the clause designated to address the effects of any variation in the estimated quantity of a unit-priced item in government construction contracts." *Burnett Construction Co. v. The United States*, 26 Cl. Ct. 296, 302-03 (1992). The VA incorporated 83 FAR's/VAAR's into the Contract, yet it made a clear decision not to incorporate the VEQ FAR into the contract and instead requested that bidders provide a price for additional quantities of Rock Excavation. JSF ¶10. Furthermore, the VEQ FAR cannot be read into the contract. *G.L. Christian & Associates v. United States*, 160 Ct.Cl. 1 (1963) (held that only contract provisions required by law must be read into government contracts); *see also Lambrecht & Sons, Inc.*, ASBCA No. 49515 (July 7, 1997) (holding the Variation in Estimated Quantities clause should not be incorporated into a contract under the *Christian* doctrine). Thus, if the VA had intended to have an additional contract provision provided for an equitable adjustment due solely to a variation in quantity, it could have and should have incorporated the VEQ FAR.

Instead of including the VEQ FAR, the VA made a conscious decision to include a unit price for all classified excavation, including future excavation, in the Contract. Specifically,

Sub-Section 1.5 (B) (2) of Section 02200 of the Project Specifications defines the rock at this site as classified excavation for which Burchick is to be paid $45 per cubic yard for all rock excavation in excess of 100 cubic yards. JSF ¶¶3-4. Furthermore, page 1442-3 of bid documents (which are part of the Contract Documents) states that this $45 per cubic yard price is to "establish" "a basis for future adjustments" if quantities of rock removal exceed the base amount of 100 cubic yards set forth in the Contract. A530. Had the VA wanted to protect against variations in quantity, it could have incorporated the VEQ FAR into the Contract. Instead of doing this, the VA provided its own framework for establishing a basis for future adjustments. It should not be forgotten, that this contracting mechanism gives the VA the benefit of cost certainty while imposing on Burchick the risk that its cost of Rock Excavation may exceed $45 per yard. Burchick could have encountered material that fit the definition of Rock Excavation under the Contract and needed extremely expensive equipment or additional manpower to remove such material such that the $45 per hour would not have covered Burchick's costs. Under this scenario, Burchick would be precluded from seeking an equitable adjustment of the Contract price. Similarly, the VA should be so precluded now.

**3. To the extent there are inconsistencies under the Contract between provisions, the specific provision addressing cost of excavating additional materials meeting the definition of Rock Excavation governs the Contract.**

When a contract contains general and specific provisions "which are in anyway inconsistent, 'the provision directed to a particular matter controls over the provision which is general in its terms.'" *Dalton v. Cessna Aircraft Co.*, 98 F.3d 1298, 1305 (Fed. Cir. 1996) *citing Hills Materials Co. v. Rice*, 982 F.2d 514, 517 (Fed. Cir. 1992) ("the provision directed to a particular matter controls over a provision which is general in its terms").

At the heart of this litigation are two provisions of the Contract. Burchick's position is that the provision in the bid documents asking for Burchick to provide a bid for Rock Excavation "so that if quantities vary, a basis for future adjustment has been established" is specifically tailored for the specific issue of a variation in the quantity of Rock Excavation. The VA, on the other hand, appears to rely on Section 02200 1.6(B) of the Project Specifications for its argument Burchick is only entitled to an equitable adjustment in contract price. That provision states: "No separate payment shall be made for rock excavation quantities shown. Contract price and time will be adjusted for overruns and underruns in accordance with Articles DIFFERING SITE CONDITIONS, CHANGES and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable." JSF ¶6.

The provisions relied upon by the VA and incorporated by reference are clearly more general provisions of the Contract between the parties and relate to allowing the VA to issue change orders for Burchick to undertake responsibilities not contemplated by the original Contract or allowing for equitable adjustments for conditions (other than varying quantities of Rock Excavation) not anticipated by the Contract.

Furthermore, the language of section 02200 1.6(B) makes clear that the incorporated provisions are only relevant to the extent they are "applicable." The inclusion of the language "as applicable" should not be discounted. The fact that the Contract limits the VA's ability to invoke the differing site conditions FAR, changes FAR and changes-supplement VAAR to those situations when "applicable" necessarily implies that there are times when those provisions may not be applicable. The VA has yet to articulate why these more general provisions are applicable to a situation dealing solely with variations in quantity of Rock Excavation despite the fact (1) the Contract contains a provision that deals specifically with a situation where the quantity of

rock excavation varies and (2) another FAR exists, that the VA could have incorporated, that also explicitly deals with variations in quantity.

## IV. CONCLUSION

For the reasons set forth above, Burchick respectfully requests that this Court enter Partial Summary Judgment awarding Burchick compensation of $45 per cubic yard for all additional Rock Excavation performed under the Contract.

Dated: May 28, 2008

Respectfully submitted,

BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.

By: /s/ D. Matthew Jameson

D. Matthew Jameson III, Esquire
PA ID No. 67764
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
412-394-5400
412-586-1078
mjameson@bccz.com

**CERTIFICATE OF SERVICE**

I, D. Matthew Jameson, hereby certify that on this 28th day of May, 2008, I caused a true and correct copy of the foregoing BRIEF IN SUPPORT OF BURCHICK'S MOTION FOR PARTIAL SUMMARY JUDGMENT to be filed via the Court's Electronic Case Filing System. The document is available for viewing and downloading from the Court's Electronic Case Filing System. I have also caused a true and correct copy of the document to be served upon the following by first class mail, postage prepaid:

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L. Street, N.W.
Washington, D.C. 20530

/s/ D. Matthew Jameson