No. 08-15C
(Judge Horn)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

BURCHICK CONSTRUCTION COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

REGINALD T. BLADES, JR.
Assistant Director

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644

June 4, 2008

Attorneys for Defendant

# TABLE OF CONTENTS

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. The Plain Language Of The Contract Requires Compensation For Rock Excavation Differing In Quantity From 100 Cubic Yards To Be Determined By An Equitable Adjustment, And Burchick's Contrary Position Ignores Several Contractual Provisions . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The "As Applicable" Language In Section 02200 1.6(B) Does Not Preclude The Application Of An Equitable Adjustment . . . . . . . . . . . . . . . . . . . . 5

A. Burchick's Argument Regarding The Applicability Of The Differing Site Conditions Clause Is Irrelevant . . . . . . . . . . . . . . . . . . . . . 6

B. The FAR Provisions Referenced In Section 02200 1.6(B) Are Applicable Because The Contract Specifically Requires Their Application To Issues Regarding Payment For Rock Excavation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. The Government's Omission Of The VEQ Clause Does Not Invalidate The Payment Vehicle It Created For Variations In Quantity For Rock Excavation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## CASES

Dalton v. Cessna Aircraft Co.,
98 F.3d 1298 (Fed. Cir. 1996) . . . . . . . . . . 3

Earth Burners, Inc. v. United States,
43 Fed. Cl. 481 (1999) . . . . . . . . . . 7, 11

First Nationwide Bank v. U.S.,
48 Fed. Cl. 248 (2000) . . . . . . . . . . 10

Gardiner, Kamya & Associates, P.C. v. Jackson,
467 F.3d 1348 (Fed. Cir. 2006) . . . . . . . . . . 10

Government Sys. Advisors, Inc. v. United States,
847 F.2d 811 (Fed. Cir. 1988) . . . . . . . . . . 3

Medlin Const. Group, Ltd. v. J. Harvey,
449 F.3d 1195 (Fed. Cir. 2006) . . . . . . . . . . 2, 9

Perini Corp. v. United States,
381 F.2d 403 (Ct. Cl. 1967) . . . . . . . . . . 6-7

P.J. Maffei Bldg. Wrecking Corp. v. United States,
732 F.2d 913 (Fed. Cir. 1984) . . . . . . . . . . 6

Sinclair Oil Corp. v. Abraham,
291 F.3d 822 (Fed. Cir. 2002) . . . . . . . . . . 3

## RULES AND REGULATIONS

RCFC 7.2(a) . . . . . . . . . . 1

48 C.F.R. § 52.211-18 . . . . . . . . . . 2, 9

48 C.F.R. § 52.236-2 . . . . . . . . . . 4, 8

48 C.F.R. § 52.243-4 . . . . . . . . . . 5, 8

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURCHICK CONSTRUCTION COMPANY, INC., | ) | |
| Plaintiff, | ) | No. 08-15C |
| v. | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION**
**FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 7.2(a) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this response to "Plaintiff Burchick Construction Company's Motion For Partial Summary Judgment."

In our cross-motion for partial summary judgment, we established that the plain language of the contract at issue in this litigation provides that, if the volume of rock excavated by Burchick differs from 100 cubic yards, Burchick's compensation for overrun shall be determined by an equitable adjustment that reflects Burchick's reasonable cost plus a reasonable profit.

In its cross-motion, Burchick makes three principal arguments. First, Burchick contends that the plain language of the contract requires that it be paid $45 per cubic yard for rock excavation, regardless of the volume of rock actually excavated, because the solicitation's bid sheet states, among other things, that Burchick's bid price of $45 per cubic yard serves as a "basis for future adjustments." Second, Burchick argues that the phrase "as applicable," contained in section 02200 1.6(B) of the contract, limits the applicability of the standard Federal Acquisition Regulation ("FAR") clauses also referenced in that provision, and none of them are applicable. Third, Burchick argues that the Government's failure to include the FAR clause

addressing variations in estimated quantity, 48 C.F.R. § 52.211-18 (the "VEQ") precludes this Court from granting the defendant's cross-motion for summary judgment, because the VEQ was specifically crafted to address the situation presented by this case and requires an equitable adjustment for variations in estimated quantities exceeding 15 percent.

As we demonstrate below, the assertions made by Burchick in its motion are without merit, and the United States respectfully renews its request that this Court grant its cross-motion for partial summary judgment.

## ARGUMENT

I. The Plain Language Of The Contract Requires Compensation For Rock Excavation Differing In Quantity From 100 Cubic Yards To Be Determined By An Equitable Adjustment, And Burchick's Contrary Position Ignores Several Contractual Provisions

Burchick argues that the plain language of the contract compels the conclusion that it must be paid $45 per cubic yard for all rock excavation, as that term is defined in the contract, no matter what quantity is actually excavated. Burchick's Brief In Support Of Its Motion For Partial Summary Judgment ("Pl. Br.") at 6-7. Burchick's argument, however, relies upon only certain portions of the contract. Those portions are, specifically, the phrase "basis for future adjustments" stated upon the bid sheet, and Burchick's $45 per cubic yard bid for the first 100 cubic yards of rock excavation. Id. Burchick contends that these two provisions require payment for all rock excavation at a rate of $45 per cubic yard, no matter what quantity is actually excavated (even though neither provision expressly states as much), and any other interpretation would render these provisions "inconsistent, superfluous or redundant." Id. at 7 (citing Medlin Const. Group, Ltd. v. J. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006)).

Burchick's interpretation must fail for several reasons. First, the two phrases upon which

Burchick relies do not state that the Government is required to pay Burchick $45 per cubic yard for all rock excavated from the project site. Rather, they state that Burchick's $45 unit price bid serves two functions: (1) a factor in computing the 100 cubic yard component of Burchick's bid; and (2) as a "basis for future adjustments" if the quantity of rock excavated varies from the 100 cubic yard estimate. JSF ¶ 3; A25. There is nothing here stating that any additional rock excavated must be paid at the $45 unit price,[1] and the Court's refusal to graft this additional and unsupported meaning onto this language will not eviscerate their stated purpose.

Second, Burchick ignores the fundamental principle of contract interpretation that neither the parties nor the Court are free to pick and choose favorable contract language while ignoring other provisions. See Sinclair Oil Corp. v. Abraham, 291 F.3d 822, 830 (Fed. Cir. 2002) ("observing that the "fundamentals of contract interpretation do not permit the [a party] to pick and choose among the provisions of [the contract] and decide which terms it will give effect to and which terms it will ignore"); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir. 1996) (describing as a "settled principle[] of contract interpretation" that courts "view[] the contract as a whole"); Government Sys. Advisors, Inc. v. United States, 847 F.2d 811, 813 n.2 (Fed. Cir. 1988) (There is "no need to resort to a contract interpretation which both distorts the provisions relating to the contract term and ignores other significant portions of the contract.").

---

[1] At page 5 of its opening brief, Burchick states that "[i]t is undisputed that the Contract provides for payment of $45 per cubic yard of additional Rock Excavation," and cites as support the Joint Stipulation of Facts ¶ 4 ("Burchick bid a "Cost Per CY" price of $45. A530."), and ¶ 7 ("On July 17, 2006, the VA accepted Burchick's offer, and on or about July 28, 2006, Burchick was awarded Contract No. VA786A-C-0021 ("Contract"). A526-29."). Burchick's statement is, of course, not true. Both this case and the present cross-motions are a function of the ongoing dispute between the parties regarding the contract's requirements for payment for "additional" rock excavation beyond the estimated 100 cubic yards.

Burchick's interpretation ignores several critical contractual provisions. The first critical omission is the remainder of the bid-sheet clause upon which Burchick relies (the one containing the phrase, "basis for future adjustments"). That clause states, in its entirety:

> As outlined in Section 02200 1.6 the Contractor must provide a price for rock removal so that if quantities vary from the base amount, a basis for future adjustments has been established."

Joint Statement of Facts ("JSF") at ¶ 3; Appendix to the JSF ("A") at 25.

The meaning of this clause is clear: for any variation in the volume of excavated rock from the 100 cubic yard estimate ("if quantities vary from the base amount"), an "adjustment" will be made to the contract price, and that adjustment will be made in accordance with "Section 02200 1.6" of the contract.

Burchick's next omission is section 02200 1.6 of the contract. This section, titled "Measurement And Payment For Rock Excavation," provides specific instructions for measuring quantities of excavated rock (section 1.6(a)), and payment for those quantities (section 1.6(b)). The payment section provides, in its entirety:

> No separate payment shall be made for rock excavation quantities shown. Contract price and time will be adjusted for overruns or underruns in accordance with Article, DIFFERING SITE CONDITIONS, CHANGES, and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable.

JSF ¶ 6; A349. This clause -- which is only invoked when actual rock excavation differs from the estimated 100 cubic yards -- provides that payment for such rock excavation shall be made in accordance with two standard FAR clauses (and a VA supplement to the FAR changes clause), both of which resolve payment issues through equitable adjustments. See 48 C.F.R. § 52.236-2 (b) (differing site conditions") (when the differing site condition results in an increase or

decrease in the contractor's costs or time, "an equitable adjustment shall be made under this clause and the contract modified in writing accordingly"); 48 C.F.R. § 52.243-4(d) (changes) (when a change results in an increase or decrease in the contractor's costs or time, "the Contracting Officer shall make an equitable adjustment and modify the contract in writing").

Finally, the last critical provision Burchick ignores is the first sentence of section 02200 1.6, which states: "No separate payment shall be made for rock excavation quantities shown." JSF ¶ 6; A349. Burchick's position in this litigation is that its compensation for rock excavation is the product of the quantity of rock excavated and its $45 bid unit price. This method does not require an adjustment to the contract price; rather, it automatically increases Burchick's compensation by each cubic yard of rock it removes from the earth. This is essentially a separate payment for rock excavation, which section 02200 1.6(b) expressly prohibits.

Thus, after taking into consideration all the relevant contractual provisions, the contract plainly requires Burchick to submit a request for an equitable adjustment if it excavates any amount of rock other than the 100 cubic yards estimated by the VA upon the bid sheet.

## II. The "As Applicable" Language In Section 02200 1.6(B) Does Not Preclude The Application Of An Equitable Adjustment

Burchick argues that the phrase "as applicable" in section 02200 1.6(b) of the contract operates to preclude the application of the FAR and VAAR clauses that are also referenced in that section, because (a) Burchick's discovery of more than 20,000 cubic yards of rock beyond the 100 cubic yard estimate does not constitute a differing site condition, Pl. Br. at 7-9; and (b) "there are times when those provisions may not be applicable . . . [and] [t]he VA has yet to articulate why these more general provisions are applicable to a situation dealing solely with variations in quantity of Rock Excavation," Pl. Br. at 11.

A. Burchick's Argument Regarding The Applicability Of The Differing Site Conditions Clause Is Irrelevant

Burchick's argument concerning the applicability of the FAR differing site condition clause is predicated upon Burchick's misapprehension of Perini Corp. v. United States, 381 F.2d 403 (Ct. Cl. 1967).[2] Burchick asserts that Perini stands simply for the proposition that "'[s]ubstantial variation from the estimated quantities, standing alone' is not 'sufficient to establish the existence of a changed condition.'" Pl. Br. at 7-8 (quoting Perini, 381 F.2d at 410-11). However, this is not the Perini court's holding. In Perini, the issue was "whether a substantial variation from an estimated quantity in contract specifications constitutes a changed condition within the meaning of the standard Changed Conditions article, when the facts establish that the variation was foreseen by the contractor and should reasonably have been anticipated by the Government." 381 F.2d at 405 (emphasis added). Unlike the present case, the contract at issue in Perini did not contain a provision directing the parties to any particular FAR provision as the specific vehicle for resolving issues of quantity overruns or underruns. The Government asserted, without the benefit of such a mechanism, that enormous changes in estimated quantities alone could constitute a differing site condition. In the sentence directly following the one Burchick quotes in its opening brief, the Claims Court acknowledged that

[2] Burchick also cites P.J. Maffei Bldg. Wrecking Corp. v. United States, 732 F.2d 913 (Fed. Cir. 1984), in support of its assertion that substantial variations in estimated quantities, standing alone, do not support the application of the FAR differing site conditions clause. Pl. Br. at 8. The contract in that case advised bidders to include the salvage value of construction materials in their bids because they would be permitted to remove such materials from the project site. 732 F.2d at 914. The contract, however, did not contain an estimated quantity of salvage materials; rather, it directed the bidders to consult certain drawings kept by the New York City municipal government, and expressly disclaimed any liability for the information contained in those drawings. Thus, the Maffei case is not applicable to the issue presented to this Court.

some of its prior holdings did apply the changed conditions clause when there had been substantial variation between the estimated and actual quantities -- but only when such variations were not reasonably foreseeable. Id. at 410-11. The Claims Court held that "the test to be applied in deciding this case is whether the parties, from the information available to them, should reasonably have expected a material variation in the contract estimates . . . ." Id. at 412.

Perini does not apply to this case for two reasons. First, assuming that the contract in Perini was materially similar to the contract at issue in this case, which it is not, Burchick does not allege that the Government (or Burchick) had any reason to believe that the 100 cubic yard estimate stated upon the bid sheet substantially understated the rock present beneath the project site. Thus, the holding in Perini does not apply to this case.[3]

Second, as highlighted above, the contract at issue in Perini did not contain a mechanism, like the one in this case, that directs the parties to specific FAR provisions requiring the negotiation of an equitable adjustment when faced with variations from estimated quantities. As we demonstrated in our opening brief, this Court's decision in Earth Burners, Inc. v. United States, 43 Fed. Cl. 481 (1999), establishes that, when such a provision is present, the referenced FAR provision always applies. 43 Fed. Cl. at 487 ("In such circumstances, the contract by its plain terms called for application of the Differing Site Conditions clause, and thus our inquiry should be over."). In this case, section 02200 1.6(b) of the contract states that payment for overruns or underruns in rock excavation shall be addressed under the FAR differing site conditions clause, the FAR changes clause, and/or the VAAR changes-supplement clause, "as

[3] We note that, if Court determines that the Perini rule does apply to this case, the foreseeability component of that rule is factual in nature, and would prevent this Court from granting Burchick's cross-motion for partial summary judgment at this time.

applicable." As outlined above, the two FAR provisions provide separate paths to the same result -- an equitable adjustment as the result of either a differing site condition or a change. (The VAAR clause merely provides additional administrative procedures for addressing change orders.) In this case, in response to the excess rock issue, the VA issued two change orders pursuant to the FAR changes provision. See A536 (COCO A, issued pursuant to the FAR changes clause); 538 (COCO B, issued pursuant to the FAR changes clause). Thus, the FAR changes clause applies, even if the FAR differing site conditions clause does not apply. Either way, an equitable adjustment is required.

B. The FAR Provisions Referenced In Section 02200 1.6(B) Are Applicable Because The Contract Specifically Requires Their Application To Issues Regarding Payment For Rock Excavation

Burchick also argues that, because the phrase "as applicable" in section 02200 1.6(B) necessarily limits the Government's ability to invoke the FAR and VAAR clauses referenced in that section, and because the bid-sheet language of "as a basis for future adjustments," together with the $45 unit price, allegedly constitutes the only contractual provision specifically addressing payment for rock excavation, the Government cannot apply any of the FAR or VAAR clauses referenced in section 02200 1.6(B) because this "situation deal[s] solely with variations in quantity of Rock Excavation." Pl. Br. at 11.

Burchick's argument does not withstand scrutiny. As we have established above and in our opening brief, the bid-sheet provision does not state that Burchick must be paid $45 per cubic yard for all rock excavated from the project site. Also, contrary to Burchick's assertion that the bid-sheet clause is the only contractual provision specifically addressing payment for rock excavation, the bid-sheet clause specifically incorporates section 02200 1.6, which is

entitled "Measurement And Payment For Rock Excavation." A25, 348 (emphasis added). Subsection 1.6(B), titled "Payment," specifically directs the parties to the FAR differing site conditions and/or changes provisions by stating: "Contract price and time will be adjusted for overruns or underruns in accordance with Article, DIFFERING SITE CONDITIONS, CHANGES, and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable." A349.

Therefore, the reason why either the FAR differing site conditions or changes provisions should be applied in this case is because the contract provision specifically addressing payment for rock excavation expressly states that these clauses should be applied.[4]

III. The Government's Omission Of The VEQ Clause Does Not Invalidate The Payment Vehicle It Created For Variations In Quantity For Rock Excavation

Burchick argues that, had the Government wanted to avoid paying the $45 per cubic yard bid price for all excavated rock, it should have inserted the FAR "variation in estimated quantity" clause, 48 C.F.R. § 52.211-18 (the "VEQ"), into the contract. Pl. Br. at 9-10. Burchick contends that, because the VEQ is specifically designed to address variations in quantity estimates, it is the only contractual provision that can require an equitable adjustment, and the VA's omission of this clause from the contract prevents it from seeking to compel Burchick to accept an equitable adjustment in this case. Id.

---

[4] Indeed, section 02200 1.6(B) -- and its direction to the FAR provisions -- is only triggered if there are variations in the quantity of rock excavated. A25 ("if quantities vary from the base amount"). If these provisions are not triggered when quantities vary, as Burchick contends, then they are superfluous -- a result that cannot stand. See Pl. Br. at 7 ("reasonable contract interpretation must 'assure that no contract provision is made inconsistent, superfluous or inconsistent'") (quoting Medlin Const. Group, Ltd. v. J. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006)).

The starting place for interpreting a contract is the text of the contract itself. See, e.g., Gardiner, Kamya & Associates, P.C. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (summarizing the Federal Circuit's "well-settled principles of contract interpretation"). As a necessary corollary to this principle, the Court should also refrain from grafting a meaning contrary to the plain language onto a contractual provision based upon what the contract does not include. Cf. First Nationwide Bank v. U.S., 48 Fed. Cl. 248, 262-63 (2000) (when parties have negotiated a contract, court will not infer contractual terms from silence). As we have demonstrated, the contract at issue in this case contains a clear mechanism for determining the amount Burchick is entitled to receive for rock excavation differing from the original 100 cubic yard estimate, and that is an equitable adjustment. The fact that the VEQ would provide for a similar result, albeit by a different means, does not invalidate the mechanism that the contract actually contains.

Furthermore, contrary to the necessary implication in Burchick's argument, the VEQ does not provide the same mechanism that the VA created for this contract. The VEQ provides:

> If the quantity of a unit-priced item in this contract is an estimated quantity and the actual quantity of the unit-priced item varies more than 15 percent above or below the estimated quantity, an equitable adjustment in the contract price shall be made upon demand of either party. The equitable adjustment shall be based upon any increase or decrease in costs due solely to the variation above 115 percent or below 85 percent of the estimated quantity. If the quantity variation is such as to cause an increase in the time necessary for completion, the Contractor may request, in writing, an extension of time, to be received by the Contracting Officer within 10 days from the beginning of the delay, or within such further period as may be granted by the Contracting Officer before the date of final settlement of the contract. Upon the receipt of a written request for an extension, the Contracting Officer shall ascertain the facts and make an adjustment for extending the completion date as, in the judgement of the Contracting Officer, is

justified.

48 C.F.R. § 52.211-18. This provision provides that an equitable adjustment is available to either the contractor or the Government only when actual quantities vary from the estimated quantity by 15 percent or more, and it provides its own procedural mechanisms for time extensions. By contrast, the mechanism established under the contract in this case provides for an equitable adjustment for any variation between the actual and estimated quantities, and the procedures for requesting time extensions are the same as those set forth in the standard FAR changes and differing site conditions clauses. Thus, Burchick and the Government agreed to a different mechanism than what the VEQ would have provided, and the omission of the VEQ from the contract is not probative of the parties' intent to create a mechanism for the payment of rock excavation differing from the 100 cubic yard estimate. See also Earth Burners, 43 Fed. Cl. at 88 (although the contract contained the VEQ, the VEQ did not apply because variations in sludge quantity were more specifically addressed in the clause directing the parties to the FAR differing site conditions clause).

**CONCLUSION**

For the foregoing reasons, as well as those contained in our opening brief, we respectfully request that the Court deny the plaintiff's cross-motion for partial summary judgment, grant the defendant's cross-motion for partial summary judgment, and rule that the plaintiff is not entitled to compensation for all of its rock excavation at a rate of $45 per cubic yard, but rather must accept an equitable adjustment that reflects the reasonable cost plus a reasonable profit for the work it performed excavating the rock.

Respectfully submitted,

GREGORY G. KATSAS
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Reginald T. Blades, Jr.
REGINALD T. BLADES, JR.
Assistant Director

s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 305-7644
e-mail: devin.wolak@usdoj.gov

June 6, 2008

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on June 6, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Devin Wolak