No. 08-15C
(Judge Horn)

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

BURCHICK CONSTRUCTION COMPANY, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

BABST, CALLAND, CLEMENTS and ZOMNIR, P.C.
D. Matthew Jameson III, Esquire
PA ID No. 67764
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
412-394-5400
412-586-1078
mjameson@bccz.com

June 4, 2008

Attorney for Plaintiff

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. ARGUMENT ..... 2

A. The VA's proposed interpretation of the Contract does not address all of the key terms of the Contract and renders certain terms meaningless ..... 2

B. Earth Burners simply stands for the proposition that courts should apply the terms of the contract at issue ..... 6

III. CONCLUSION ..... 8

# TABLE OF AUTHORITIES

## CASES

*Earth Burners, Inc. v. United States*, 43 Fed.Cl. 481 (1999) .......................................... 2, 6, 7

*Goldsmith v. United States*, 42 Fed.Cl. 664, 668 (1999) ....................................................... 2

*Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1372 (Fed.Cir. 2002) ....... 2

*Medlin Construction Group, Ltd. v. J. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) ........ 2

*United States v. Callahan Walker Constr. Co.*, 317 U.S. 56, 61 (1942 ................................ 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BURCHICK CONSTRUCTION COMPANY, INC., | ) | |
| | ) | No. 08-15C |
| Plaintiff, | ) | |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

AND NOW comes Plaintiff Burchick Construction Company ("Burchick"), by and through its undersigned counsel, Babst, Calland, Clements and Zomnir, P.C., and files the following Brief in Opposition to Defendant's Motion For Partial Summary Judgment.

## I. INTRODUCTION

In its Cross-Motion for Partial Summary Judgment, Defendant United States Department of Veteran's Affairs ("VA") argues that, under Contract No. VA786A-C-0021 (the "Contract"), Plaintiff Burchick is limited to an equitable adjustment in contract price for the additional amounts of Rock Excavation performed by Burchick, instead of being compensated based on the contractually agreed upon unit-price of $45.00 per cubic yard called for under the Contract. JSF ¶4. In support of its argument the VA asserts the plain language of the Contract

compels the Court to reach this conclusion. In addition, the VA's legal argument relies heavily on *Earth Burners, Inc. v. United States*, 43 Fed.Cl. 481 (1999) ("*Earth Burners*").

The VA's position is wrong for two primary reasons. First, while the VA argues that the Court should rely on the plain language of the Contract between the parties, the position advocated by the VA short-shifts certain Contract terms and as a result would render certain terms of the Contract between the parties meaningless. Second, the VA argues that the issue before the Court has been decided in the *Earth Burners* case. However, at its essence, *Earth Burners* simply stands for the proposition that courts should apply the express terms of a contract, a proposition that Burchick fully supports. As discussed below, the VA's Motion should be denied and Burchick's Motion for Partial Summary Judgment should be granted.

## II. ARGUMENT

### A. The VA's proposed interpretation of the Contract does not address all of the key terms of the Contract and renders certain terms meaningless.

Burchick agrees with the VA that when the contract language is unambiguous, the plain language of the contract is controlling. *Goldsmith v. United States*, 42 Fed.Cl. 664, 668 (1999). Furthermore, when interpreting a contract, the Court must give reasonable meaning to all terms of the writing. *Hunt Construction Group, Inc. v. United States*, 281 F.3d 1369, 1372 (Fed.Cir. 2002). When determining whether an interpretation of a contract is reasonable, the Court must interpret the contract so as to "assure that no contract provision is made inconsistent, superfluous or redundant." *Medlin Construction Group, Ltd. v. J. Harvey*, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (emphasis added).

In this case, the VA focuses on one portion of the Contract between the parties, section 2200, subpart 1.6. That section states:

> No separate payment shall be made for rock excavation quantities shown.[1] Contract price and time will be adjusted for overruns or underruns in accordance with Article, DIFFERING SITE CONDITION, CHANGES, and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable.

JSF ¶6. The language "as applicable" should not be discounted, especially when read in conjunction with other sections of the Contract (*i.e.*, the portion of the Contract stating the $45 per cubic yard bid was to be used as a basis for future adjustment for Rock Excavation), because it implicitly acknowledges that there are circumstances where the Differing Site Conditions FAR, Changes FAR, and the Changes-Supplement VAAR are not applicable with respect to Rock Excavation. The VA has yet to articulate why these more general provisions should be applied to a situation dealing specifically and solely with variations in quantity of Rock Excavation when the Contract contains a provision that deals specifically with a situation where the quantity of Rock Excavation varies.

The Contract anticipates variations in quantity of Rock Excavation and provides a mechanism for determining compensation when the only issue is variation in quantities of Rock Excavation. In the bid documents incorporated into the Contract, all bidders were asked to submit a unit price for Rock Excavation on a per cubic yard basis, so that "if quantities vary from the base amount, a basis for future adjustments has been established." JSF ¶3. In its brief, the VA casts this language to the wayside. In fact, the VA goes so far as to quote this language and then leap to the conclusion that this language "plainly states that any amount other than the base amount (100cy) is the subject of a future adjustment to the contract price, and the unit price bid by the contractor functions only as a basis for determining that adjustment. As outlined

[1] This first statement applies to the 100 cubic yards of rock excavation set forth in the bid documents and confirms that Burchick cannot recover an additional payment for those 100 cubic yards since that amount was already included in the base-bid scope of work.

above, the contract plainly requires that the adjustment be an equitable one . . . ." VA Mot. at 8. Not only does the contractual provision not "plainly" state the VA's version, it does not state it at all. To the contrary, the application of this provision is simply – if Burchick is required to perform Rock Excavation in excess of 100 cubic yards, Burchick will be paid $45 per each additional cubic yard. If Burchick's costs are more than $45 per cubic yard, they will lose money and if their costs are less than $45 per cubic yard they will make money. This is the contractual allocation of risk that the parties agreed to. This Court should not be swayed by the VA's attempt to inject an ambiguity into a contractual clause where none exists – "basis for future adjustments has been established" simply means that the "basis for future adjustments has been established."

The VA's interpretation of the Contract renders the language in the contract documents that $45 per cubic yard is to be used "as a basis for future adjustments" meaningless. The VA argues that Burchick is only entitled to "reasonable cost and reasonable profit of the actual work that a contractor performs." VA Mot. at 8 *citing United States v. Callahan Walker Constr. Co.*, 317 U.S. 56, 61 (1942). According to the VA, Burchick is entitled to an equitable adjustment for Rock Excavation which equates to an increase in contract price based on Burchick's actual costs plus a reasonable profit. If the VA is correct, the $45 per cubic yard price that Burchick bid has no role in determining future payments under the Contract because all the Burchick would be able to do is submit its documentation detailing the work actually performed and Burchick would be entitled to some reasonable profit on top of that amount.

Given the Court's duty to try and give meaning to each and every term of a contract so that none will be rendered meaningless, section 2200, subpart 1.6 must mean something else

other than what the VA argues it to mean. As set forth in Burchick's Brief in support of Burchick's Motion for Partial Summary Judgment, Burchick's interpretation of the Contract is one that (1) is based on the clear unambiguous language of the entire contract and (2) gives all contract terms their reasonable meaning. Under Burchick's interpretation of the Contract, Burchick is entitled to $45 per cubic yard when there is a variation in quantity of Rock Excavation. The Differing Site Conditions FAR, Changes FAR and Changes-supplement VAAR are still applicable in other instances (e.g. – if Burchick were to encounter an unforeseen condition during its excavation), but they cannot be applicable in the case at bar because the Contract specifically addresses the quantity variation issue. This interpretation is not in contravention of the other terms of the Contract either. There are clearly times when the Differing Site Conditions FAR, the Changes FAR and the Changes-Supplement VAAR might be applicable with respect to Rock Excavation (e.g. -- an unknown underground storage tank is encountered in the process of the excavation), but a mere variation in quantity is not one of them.

Under the Differing Site Conditions FAR, differing site conditions are "subsurface, latent, or physical conditions at the site materially different from those indicated in the contract" or "unknown physical conditions at the site of an unusual nature, differing materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract." 48 C.F.R. § 52.236-2. Neither type of differing site condition is present here. The Contract explicitly anticipates that there will be need for Rock Excavation and that there may be Rock Excavation needed that is beyond the estimated quantities. The material encountered by Burchick cannot be said to be unknown, unusual, or out of the ordinary when it

is the exact type of classified excavation material set forth in the Contract. If Burchick had, on the other hand, encountered an underground storage tank or some other undisclosed foreign object, the Differing Site Conditions FAR would apply.

Similarly, the Changes FAR is invoked when there is a change "within the general scope of the contract including changes (1) in specifications . . .; (2) method and manner of performance of work; (3) in the Government-furnished property or services; or (4) directing acceleration in the performance of the work." 48 C.F.R. §52.243-4. Here, there has been no change in the scope or manner of performance of Burchick's obligations under the contract. Burchick was hired, in part, to perform classified Rock Excavation. Burchick performed those duties in accordance with the contract specifications, thus the Changes clause should not apply.

The Differing Site Conditions FAR and Changes FAR, like all contract terms, must be read in conjunction with the entire Contract. Because the Contract provides a mechanism for compensating Burchick for varying quantities of Rock Excavation, a differing site condition and a "change" necessarily must be something other than a mere variation in quantity. The very language of the Differing Site Conditions FAR supports such a conclusion as it defines a differing site conditions as a subsurface, latent, unknown or unusual physical condition that the site. Similarly, the language of the Changes FAR also supports such a conclusion as the Changes FAR is only invoked when there is a change within the general scope of the contract. Here Burchick excavated the classified material it contracted to excavate thus there is no differing site condition or change in scope of work. Under Burchick's interpretation of the Contract all terms are given a reasonable meaning based on the plain language of the Contract.

### B. *Earth Burners* simply stands for the proposition that courts should apply the terms of the contract at issue.

The VA overstates the significance of *Earth Burners*, which simply stands for the proposition that courts should apply the terms of the contract at issue. In *Earth Burners*, a contractor was hired to remove sludge from two storage tanks. *Id.* at 482. Upon removing the sludge, the contractor encountered amounts of sludge that differed significantly from the amounts indicated in the contract documents. *Id.* at 483. The contractor argued that it was entitled to the unit-price for the removal of the sludge but the Court disagreed and held that based on the language of the contract the contractor was only entitled to an equitable adjustment for work performed. *Id.*

The *Earth Burners* case differs from the present case in that the wording of the contract itself that made the "Differing Site Conditions" clause explicitly applicable to the situation encountered by the parties. *Id.* at 487. The contract explicitly provided: "If through sampling and testing, the tanks are found to contain other than 2 inches of non-hazardous diesel product/sludge, compensation therefore shall be in accordance with SECTION I: DIFFERING SITE CONDITIONS." *Id.* Based on this clause, the Court ruled:

> In such circumstances, the contract by its plain terms called for application of the Differing Site Conditions clause, and thus our inquiry should be over. "When the contract language is unambiguous, the court's inquiry is at an end and the plain language of the contract is controlling."

*Id.* (citations omitted).

In the instant case, Burchick is simply asking this Court to enforce the applicable specific contract terms, namely the term that indicates that Burchick shall be paid $45 per cubic yard of additional Rock Excavation "if quantities vary from the base amount" of 100 cubic

yards. Unlike the contract at issue in *Earth Burners,* the Contract between Burchick and the VA does not contain explicit language making the Differing Site Conditions clause applicable to the situation before the Court. Rather, the Contract only states the Differing Site Conditions clause will apply "as applicable." The Contract does not state the Differing Site Conditions clause will apply in all circumstances involving excess Rock Excavation, which is an option the VA could have invoked when drafting the Contract. (In essence, such an approach would make all excavation unclassified.) Instead, the VA decided to have the contractor provide a unit price to cover variations in quantity of classified rock excavation and limited the application of the Differing Site Conditions clause that other instances "as applicable."

Furthermore, there is no indication that the unit price at issue *Earth Burners* applied to the sludge at issue in that case. On the other hand, the contractual language at issue in the present case unequivocally designates the amount of $45 per cubic yard as the "basis for determining future adjustments."

In sum, because *Earth Burners* involved contract language that explicitly made the Differing Site Conditions FAR applicable to the situation in that case, the *Earth Burners* Court applied that clause. Similarly, because the Contract in the present case makes the unit price clause explicitly applicable to the additional Rock Excavation, this Court should apply that contractual provision.

## III. CONCLUSION

For the foregoing reasons as well as the reasons set forth in Burchick's Motion for Partial Summary Judgment, the VA's Motion should be denied and partial summary

judgment should be entered that Burchick is entitled to $45 per cubic yard for each additional cubic yard of Rock Excavation beyond the 100 cubic yards provided for in the Contract.

Dated: June 4, 2008

Respectfully submitted,

BABST, CALLAND, CLEMENTS & ZOMNIR, P.C.

By:/s/ D. Matthew Jameson
D. Matthew Jameson III, Esquire
PA ID No. 67764
Babst, Calland, Clements & Zomnir, P.C.
Two Gateway Center, 8th Floor
Pittsburgh, PA 15222
412-394-5400
412-586-1078
mjameson@bccz.com

**CERTIFICATE OF SERVICE**

I, D. Matthew Jameson III, hereby certify that on this 4th day of June, 2008, I caused a true and correct copy of the foregoing PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT to be filed via the Court's Electronic Case Filing System. The document is available for viewing and downloading from the Court's Electronic Case Filing System. I have also caused a true and correct copy of the document to be served upon the following by first class mail, postage prepaid:

Devin A. Wolak
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
1100 L. Street, N.W.
Washington, D.C. 20530

/s/ D. Matthew Jameson III