# In the United States Court of Federal Claims

**No. 08-15C**
**Filed: August 6, 2008**

| | | |
|---|---|---|
| **BURCHICK CONSTRUCTION COMPANY, INC.** <br> **Plaintiff,** <br> **v.** <br> **UNITED STATES,** <br> **Defendant.** | * | **Summary Judgment; Contract Interpretation.** |

**D. Matthew Jameson III**, Babst, Calland, Clements, and Zomnir, P.C., Pittsburgh, PA, for the plaintiff.

**Devin A. Wolak**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Commercial Litigation Branch, Washington, D.C., for the defendant. With him were **Gregory G. Katsas**, Acting Assistant Attorney General, **Jeanne E. Davidson**, Director, and **Reginald T. Blades, Jr.**, Assistant Director, Commercial Litigation Branch.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

The United States Department of Veterans Affairs (VA) issued a solicitation for Phase I work at the Cemetery of the Alleghenies in Bridgeville, Pennsylvania on March 15, 2006. Plaintiff, Burchick Construction Company, Inc., submitted a bid in response to the solicitation and, according to the parties' joint stipulation of facts, "[o]n July 17, 2006, the VA accepted Burchick's offer and on or about July 28, 2006, Burchick was awarded Contract, No. VA786A-C-0021." The solicitation, which was incorporated into the contract, estimated that 100 cubic yards of rock would be removed from the construction site. The two terms of the solicitation which are at the center of the dispute dictate the method of adjusting the contract price should any excess rock need to be removed. The parties have stated the issue of law in this case as:

> Whether contract no. VA786A-C-0021 (the "Contract") requires defendant, the United States, to pay plaintiff, Burchick Construction Company, Inc. ("Burchick"), $45 per cubic yard for all extra "rock removal" performed

> upon the project, or whether the Contract entitles Burchick to an equitable adjustment of the contract price for rock removal performed in excess of the 100 cubic yard estimate provided by the Government in the solicitation.

The solicitation provisions in question will be referred to as "Term I" and "Term II." The words of Term I are located following an apparent worksheet with blanks for the contractor to fill in dollar amounts. Term I is included on the worksheet as a direction and requirement to the contractor, as follows:

> As outlined [sic] Section 02200 1.6 the Contractor must provide a price for rock removal so that if quantities vary from the base amount [100 cubic yards], a basis for future adjustments has been established. The total cost requested below must be included in Base Bid Item No. 1[.]

Immediately below this language in Term I is a line for the contractor to fill in the unit cost and total cost for rock removal for the 100 cubic yards estimated in the solicitation, which appears as follows:

| | ESTIMATED QUANTITY | COST PER CY | TOTAL COST |
|---|---|---|---|
| ROCK REMOVAL | 100 CY | $ _______ | $ _______ |

Apparently, "Base Bid Item No. 1" included the estimated 100 CY (cubic yards) of rock removal. Term I required the contractor to break out its price for the rock removal from "Base Bid Item No. I" and to list it as the "total cost" for the estimated 100 cubic yards of rock to be removed along with the unit price per cubic yard of rock removal. In response to this requirement, plaintiff stated in its proposal that it would charge $45.00 per cubic yard of rock removal.

Term II, Section 02200, Part 1.6, subpart B is cited to in Term I above and falls under the heading "MEASUREMENT AND PAYMENT FOR ROCK EXCAVATION." Term II states:

> Payment: No separate payment shall be made for rock excavation quantities shown. Contract price and time will be adjusted for overruns or underruns in accordance with Articles, DIFFERING SITE CONDITIONS, CHANGES and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable.

(emphasis in original). The "Articles" referred to in Term II immediately above are Federal Acquisition Regulation (FAR) clauses, FAR 52.236-2 ("Differing Site Conditions"), FAR 52.243-4 ("Changes"), and Veterans Affairs Acquisition Regulation (VAAR) 852.236-88 ("Contract Changes -- Supplement"), which were incorporated into the contract. The construction contract variation in quantity clause, at 48 C.F.R. §

52.211-18, "Variation in Estimated Quantity (Apr 1984)," was not incorporated into the contract (see 48 C.F.R. § 11.702 (2007)).

While excavating the site, plaintiff removed thousands of cubic yards of rock in excess of the 100 cubic yard estimate. During performance, the government issued two Central Office Change Orders (COCO) to adjust the contract price for a differing site condition to reflect the additional rock removed. The first, COCO A, addresses the removal of "yellow/orange material" not previously identified, and instructs plaintiff to "provide a detailed cost proposal for this additional work . . . in order to negotiate a supplemental agreement for this change order." COCO A specified that any price adjustment was not to exceed $150,000.00. The second, COCO B, deals with the removal of gray "Claystone material" and states that "the matter of contract price and time will be subject to equitable adjustment . . . ." The government allocated up to $212,796.00 for this second adjustment. Plaintiff has not billed any of its work to the two change orders.

Plaintiff has consistently asserted that the contract requires excess rock removal to be paid at $45.00 per cubic yard. The VA has consistently maintained that pursuant to the contract, additional compensation to plaintiff for rock removal in excess of 100 cubic yards should be determined as an equitable adjustment to the contract price.

Plaintiff sent claims to the VA requesting compensation in addition to that authorized by COCO A and COCO B. On August 3, 2007, the contracting officer responded to plaintiff's claim stating, "The VA disagrees that the contractor is entitled to $45 per Cubic Yard (45/CY) for all volumes of rock in excess of the 100 CY." The contracting officer then outlined the VA's reasoning for its decision, indicating that the parties should negotiate to determine an equitable price that is "closer in line with costs incurred" for the excess rock removal. The contracting officer also indicated that this was not a contracting officer's final decision because she needed more information "in order to make an informed decision." Plaintiff, however, considered the contracting officer's letter as a final decision and subsequently filed a complaint in this court.

The parties have filed cross-motions for partial summary judgment. Plaintiff claims that "[i]t is undisputed that the Contract provides for payment of $45 per cubic yard of additional Rock Excavation." Defendant, on the other hand, claims that the "plain language" of the contract dictates that any additional price adjustment to account for excess rock excavation be made by equitable determination.

**DISCUSSION**

Rule 56 of the Rules of the United States Court of Federal Claims (RCFC) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); see also Fed. R. Civ. P. 56(c) (which is similar both in language and effect); Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 247-48 (1986); Adickes v. S. H. Kress & Co., 398 U.S. 144, 157 (1970); Moden v. United States, 404 F.3d 1335, 1342 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2005); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1370-71 (Fed. Cir. 2004), cert. denied, 545 U.S. 1139 (2005); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253, 1257 (Fed. Cir. 2001); Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996), reh'g denied (Fed. Cir. 1997); Creppel v. United States, 41 F.3d 627, 630-31 (Fed. Cir. 1994); Atwood-Leisman v. United States, 72 Fed. Cl. 142, 147 (2006). A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. at 247-48; see also Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied, 361 U.S. 843 (1959), reh'g denied, 361 U.S. 941 (1960).

When reaching a summary judgment determination, the judge's function is not to weigh the evidence and determine the truth of the case presented, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249; see, e.g., Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); Johnson v. United States, 49 Fed. Cl. 648, 651 (2001), aff'd, 52 F. App'x 507 (Fed. Cir. 2002), published at 317 F.3d 1331 (Fed. Cir. 2003); Becho, Inc. v. United States, 47 Fed. Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-52; Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979, 982 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1993). When the record could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. See, e.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Rothe Dev. Corp. v. United States Dep't of Defense, 262 F.3d 1306, 1316 (Fed. Cir. 2001); Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996). In such a case, there is no need for the parties to undertake the time and expense of a trial, and the moving party should prevail without further proceedings. Summary judgment

> saves the expense and time of a full trial when it is unnecessary. When the material facts are adequately developed in the motion papers, a full trial is useless. "Useless" in this context means that more evidence than is already available in connection with the motion for summary judgment could not reasonably be expected to change the result.

Dehne v. United States, 23 Cl. Ct. 606, 614-15 (1991) (citing Pure Gold, Inc. v. Syntex, Inc., 739 F.2d 624, 626 (Fed. Cir. 1984)), vacated on other grounds, 970 F.2d 890 (Fed. Cir. 1992); see also U.S. Steel Corp. v. Vasco Metals Corp., 394 F.2d 1009, 1011 (C.C.P.A. 1968).

Summary judgment, however, will not be granted if "the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 971 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1109 (2002); Gen. Elec. Co. v. Nintendo Co., 179 F.3d 1350, 1353 (Fed. Cir. 1999). In other words, if the nonmoving party produces sufficient evidence to raise a question as to the outcome of the case, then the motion for summary judgment should be denied. Any doubt over factual issues must be resolved in favor of the party opposing summary judgment, to whom the benefit of all presumptions and inferences runs. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 587-88; Dethmers Mfg. Co. v. Automatic Equip. Mfg. Co., 272 F.3d 1365, 1369 (Fed. Cir. 2001), reh'g and reh'g en banc denied, 293 F.3d 1364 (Fed. Cir. 2002), cert. denied, 539 U.S. 957 (2003); Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d at 1257; Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1998); see also Am. Pelagic Co. v. United States, 379 F.3d at 1371 (citing Helifix, Ltd. v. Block-Lok, Ltd., 208 F.3d 1339, 1345-46 (Fed. Cir. 2000)).

The initial burden on the party moving for summary judgment to produce evidence showing the absence of a genuine issue of material fact may be discharged if the moving party can demonstrate that there is an absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); see also Riley & Ephriam Constr. Co. v. United States, 408 F.3d 1369, 1371 (Fed. Cir. 2005); Crown Operations Int'l Ltd. v. Solutia Inc., 289 F.3d 1367, 1377 (Fed. Cir.), reh'g denied (Fed. Cir. 2002); Trilogy Commc'ns, Inc. v. Times Fiber Commc'ns, Inc., 109 F.3d 739, 741 (Fed. Cir.) (quoting Conroy v. Reebok Int'l, Ltd., 14 F.3d 1570, 1575 (Fed. Cir. 1994)), reh'g denied and en banc suggestion declined (Fed. Cir. 1997); Lockwood v. Am. Airlines, Inc., 107 F.3d 1565, 1569 (Fed. Cir. 1997). If the moving party makes such a showing, the burden shifts to the nonmoving party to demonstrate that a genuine dispute regarding a material fact exists by presenting evidence which establishes the existence of an element essential to its case upon which it bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. at 322; Am. Airlines, Inc. v. United States, 204 F.3d 1103, 1108 (Fed. Cir. 2000); see also Long Island Sav. Bank, FSB v. United States, 503 F.3d 1234, 1244 (Fed. Cir. 2007), petition for cert. filed (Mar. 27, 2008) (No. 07-1234); Schoell v. Regal Marine Indus., Inc., 247 F.3d 1202, 1207 (Fed. Cir. 2001). However, "a non-movant is required to provide opposing evidence under Rule 56(e) only if the moving party has provided evidence sufficient, if unopposed, to prevail as a matter of law." Saab Cars USA, Inc. v. United States, 434 F.3d 1359, 1369 (Fed. Cir. 2006).

Even if both parties argue in favor of summary judgment and allege an absence of genuine issues of material fact, however, the court is not relieved of its responsibility to determine the appropriateness of summary disposition in a particular case. Prineville Sawmill Co. v. United States, 859 F.2d 905, 911 (Fed. Cir. 1988) (citing Mingus Constructors, Inc. v. United States, 812 F.2d 1387, 1391 (Fed. Cir. 1987)); see also Chevron USA, Inc. v. Cayetano, 224 F.3d 1030, 1037 n.5 (9th Cir. 2000), cert. denied,

532 U.S. 942 (2001); St. Christopher Assocs., L.P. v. United States, 75 Fed. Cl. 1, 8 (2006), aff'd, 511 F.3d 1376 (Fed. Cir. 2008). "[S]imply because both parties moved for summary judgment, it does not follow that summary judgment should be granted one or the other." LewRon Television, Inc. v. D.H. Overmyer Leasing Co., 401 F.2d 689, 692 (4th Cir. 1968), cert. denied, 393 U.S. 1083 (1969); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 593 (6th Cir. 2001); Massey v. Del Labs., Inc., 118 F.3d 1568, 1573 (Fed. Cir. 1997). Cross-motions are no more than a claim by each party that it alone is entitled to summary judgment. The making of such inherently contradictory claims, however, does not establish that if one is rejected the other necessarily is justified. B.F. Goodrich Co. v. United States Filter Corp., 245 F.3d at 593; Atl. Richfield Co. v. Farm Credit Bank of Wichita, 226 F.3d 1138, 1148 (10th Cir. 2000); Allstate Ins. Co. v. Occidental Int'l, Inc., 140 F.3d 1, 2 (1st Cir. 1998); Reading & Bates Corp. v. United States, 40 Fed. Cl. 737, 748 (1998). The court must evaluate each party's motion on its own merits, taking care to draw all reasonable inferences against the party whose motion is under consideration or otherwise stated in favor of the non-moving party. DeMarini Sports, Inc. v. Worth, Inc., 239 F.3d 1314, 1322 (Fed. Cir. 2001); see also Gart v. Logitech, Inc., 254 F.3d 1334, 1338-39 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2001), cert. denied, 534 U.S. 1114 (2002); Telenor Satellite Servs. v. United States, 71 Fed. Cl. 114, 119 (2006).

In the present case, the parties agree on all material facts, but disagree on the meaning of the relevant contract language. Contract interpretation is a question of law, which poses an appropriate question for summary judgment resolution. See H.B. Mac, Inc. v. United States, 153 F.3d 1338, 1345 (Fed. Cir. 1998) (stating that matters of contract interpretation are questions of law); Dalton v. Cessna Aircraft Co., 98 F.3d 1298, 1305 (Fed. Cir.), reh'g denied and en banc suggestion declined (Fed. Cir. 1996); C.W. Over & Sons, Inc. v. United States, 54 Fed. Cl. 514, 520 (2002).

"'It has been a fundamental precept of common law that the intention of the parties to a contract control[s] its interpretation.'" Beta Sys., Inc. v. United States, 838 F.2d 1179, 1185 (Fed. Cir. 1988) (quoting Firestone Tire & Rubber Co. v. United States, 444 F.2d 547, 551 (Ct. Cl. 1971)); Alvin, Ltd. v. United States Postal Service, 816 F.2d 1562, 1565 (Fed. Cir. 1987) ("In the case of contracts, the avowed purpose and primary function of the court is the ascertainment of the intent of the parties."); see also Flexfab, LLC v. United States, 424 F.3d 1254, 1262 (Fed. Cir. 2005) ("[I]ntent is determined by looking to the contract and, if necessary, other objective evidence. In the absence of clear guidance from the contract language, the requisite intent on the part of the government can be inferred from the actions of the contracting officer. . . ."). When the terms of a contract are clear and unambiguous, there is no need to resort to extrinsic evidence for its interpretation. See Barron Bancshares, Inc. v. United States, 366 F.3d 1360, 1375 (Fed. Cir. 2004) ("If the terms of a contract are clear and unambiguous, they must be given their plain meaning – extrinsic evidence is inadmissible to interpret them."); Sea-Land Serv., Inc. v. United States, 213 Ct. Cl. 555, 567, 553 F.2d 651, 658 (1977), cert. denied, 434 U.S. 1012 (1978); see also King v. Dep't of Navy, 130 F.3d 1031, 1033 (Fed. Cir. 1997) ("If ambiguity is found, or if ambiguity has arisen during performance of the agreement, the judicial role is to implement the intent of the parties

at the time the agreement was made.”). However, because an ambiguous or uncertain writing sometimes can only be understood upon consideration of the surrounding circumstances, extrinsic evidence will be allowed to interpret an ambiguous clause. See Cruz-Martinez v. Dep’t of Homeland Sec., 410 F.3d 1366, 1371 (Fed. Cir. 2005) ("[M]eaning can almost never be plain except in a context." (quoting Restatement (Second) of Contracts § 212, cmt. b (1981)); Barron Bancshares, Inc. v. United States, 366 F.3d at 1375 (holding that extrinsic evidence is permissible to interpret an ambiguous contract); Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 126, 458 F.2d 994, 1005 (1972); Commonwealth Edison Co. v. United States, 56 Fed. Cl. 652, 662 (2003).

There is a limit, however, to the authority given to extrinsic evidence. For example, extrinsic evidence must be used to interpret an agreement in a manner that gives meaning to all its provisions. See McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1434 (Fed. Cir.), reh’g denied and en banc suggestion declined (Fed. Cir. 1996). Extrinsic evidence also “may not be used ‘to justify reading a term into an agreement that is not found there.’” Warren v. Office of Pers. Mgmt., 407 F.3d 1309, 1314 (Fed. Cir. 2005) (quoting Fox v. Office of Pers. Mgmt., 100 F.3d 141, 145 (Fed. Cir.1996)); see also McAbee Constr., Inc. v. United States, 97 F.3d at 1434 (“[E]xtrinsic evidence… should not be used to introduce an ambiguity where none exists." (quoting Interwest Constr. v. Brown, 29 F.3d 611, 614 (1994)); see also David Nassif Assocs. v. United States, 214 Ct. Cl. 407, 423, 557 F.2d 249, 258 (1977) ("[T]he task of supplying a missing, but essential, term (for an agreement otherwise sufficiently specific to be enforceable) is the function of the court.").

To determine the intent of the parties in the case, the court first looks to the language of the solicitation, included in the contract. Jowett, Inc. v. United States, 234 F.3d 1365, 1368 (Fed. Cir. 2000). The United States Court of Appeals for the Federal Circuit has stated that: “The principles governing interpretation of Government contracts apply with equal force to the interpretation of solicitations issued by the Government for such contracts.” Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1353 n.4 (Fed. Cir. 2004) (citing Grumman Data Sys. Corp. v. Dalton, 88 F.3d 990, 997-98 (Fed. Cir. 1996) (interpreting a solicitation using contract interpretation rules)). Regarding contract interpretation, the United States Court of Appeals for the Federal Circuit stated in Jowett, Inc. v. United States that:

> In interpreting a contract, “[w]e begin with the plain language.” “We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning.” In addition, “we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense.”

Jowett, Inc. v. United States, 234 F.3d at 1368 (citations omitted); see also Gardiner, Kamya & Assocs. v. Jackson, 467 F.3d 1348, 1353 (Fed. Cir. 2006) (citations omitted); Medlin Constr. Group, Ltd. v. Harvey, 449 F.3d 1195, 1200 (Fed. Cir. 2006) (reviewing the contract as a whole to determine the meaning of relevant provisions); Hunt Constr.

Group, Inc. v. United States, 281 F.3d 1369, 1372 (Fed. Cir. 2002) ("We begin with the plain language when interpreting a contract . . . . The contract must be considered as a whole and interpreted to effectuate its spirit and purpose, giving reasonable meaning to all parts.") (citations omitted); Giove v. Dep't of Transp., 230 F.3d 1333, 1340-41 (Fed. Cir. 2000) ("In addition, we must interpret the contract in a manner that gives meaning to all of its provisions and makes sense. Further, business contracts must be construed with business sense, as they naturally would be understood by intelligent men of affairs.") (citations omitted); Foley Co. v. United States, 11 F.3d 1032, 1034 (Fed. Cir. 1993) (finding that contract interpretation starts with analysis of the language of the written agreement); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991) (clarifying that a preferable interpretation of a contract is one that gives meaning to all parts of the contract rather than one that leaves a portion of the contract "useless, inexplicable, void, or superfluous"); Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 388, 351 F.2d 972, 975 (1965) (The language of the "contract must be given that meaning that would be derived from the contract by a reasonably intelligent person acquainted with the contemporaneous circumstances."); Enron Fed. Solutions, Inc. v. United States, 80 Fed. Cl. 382, 393 (2008) ("[C]ontext defines a contract and the issues deriving thereof.").

The court, therefore, first must ascertain whether the language at issue was ambiguous. See NVT Tech., Inc. v. United States, 54 Fed. Cl. 330, 335 (2002) (finding that the threshold question is whether the solicitation is ambiguous), aff'd, 370 F.3d 1153 (Fed. Cir. 2004). The United States Court of Appeals for the Federal Circuit has stated that "[t]o show an ambiguity [in contract language,] it is not enough that the parties differ in their respective interpretations of a contract term." NVT Tech., Inc. v. United States, 370 F.3d 1153, 1159 (Fed. Cir. 2004). In order to demonstrate ambiguity, the interpretations offered by both parties must fall within a "zone of reasonableness." Id. (quoting Metric Constructors, Inc. v. NASA, 169 F.3d 747, 751 (Fed. Cir. 1999)); see also Ace Constructors, Inc. v. United States, 499 F.3d 1357, 1361 (Fed. Cir. 2007) ("[I]n interpreting a solicitation, '[it] is ambiguous only if its language is susceptible to more than one reasonable interpretation. . . . If the provisions of the solicitation are clear and unambiguous, they must be given their plain and ordinary meaning." (quoting Banknote Corp. of Am., Inc. v. United States, 365 F.3d at 1353)). The Federal Circuit also has indicated that "a proper technique of contract interpretation is for the court to place itself in the shoes of a reasonable and prudent contractor and decide how such a contractor would act in interpreting the contract." H.B. Mac, Inc. v. United States, 153 F.3d at 1345.

In the motions currently before the court, the parties dispute the impact of Terms I and II, quoted above, in order to determine how plaintiff should be compensated for additional rock removal. After careful consideration of the words of Terms I and II, the court concludes that both Terms I and II, when read individually or when read together, contain ambiguous language making summary judgment inappropriate in resolving the dispute between the parties.

Plaintiff asserts that when the issue is cost per cubic yard of rock removal, the contract, through Term I, "provides a mechanism for determining compensation," and

that the FAR and VAAR clauses incorporated in Term II are applicable to circumstances not otherwise addressed in the contract. In making this argument, plaintiff argues that Term I specifically addresses the "quantity variation issue" and establishes a fixed price of $45.00 for each cubic yard of rock removed, including any cubic yards removed in excess of the estimated 100 cubic yards. Plaintiff further argues that Term II and the FAR and VAAR clauses incorporated therein are not relevant to the situation because the contract "specifically addresses the quantity variation issue." Plaintiff argues that the final two words of Term II, "as applicable," "implicitly acknowledge[] that there are circumstances where the Differing Site Conditions FAR, Changes FAR, and the Changes-Supplement VAAR are not applicable with respect to Rock Excavation." Defendant disagrees and argues that when Terms I and II are read together, the contract price for rock removal above 100 cubic yards must be adjusted by way of an equitable adjustment pursuant to the FAR and VAAR clauses.

Term I required the contractor to identify and fill in blanks on the offer sheet for its price per cubic yard for removal of the estimated 100 cubic yards of rock as part of its offer to be incorporated into the contract so that, as stated on the offer sheet, "if quantities vary from the base amount a basis for future adjustments has been established." The phrase "a basis for future adjustments has been established" can be interpreted several ways. The use of the past tense in the term "has been established" suggests finality. Therefore, interpreting the term "basis" as indicating that the price offered by the contactor will be the unit price for excess rock removal is one reasonable interpretation. Term I provides only one line with a "$" sign in which the contractor can place a "Cost Per CY ($ ___ )." There is not a separate line to fill in cost per cubic yard for quantities above the estimated 100 cubic yards.

Another possible interpretation is that the word "basis" establishes a starting point for negotiations to determine the price for any excess rock removed, which would be negotiated in accordance with the FAR and VAAR clauses incorporated in Term II. Term I refers to Term II, which fits under the heading "MEASUREMENT AND PAYMENT FOR ROCK EXCAVATION." Term II states: "Contract price and time will be adjusted for overruns or underruns in accordance with Articles, DIFFERING SITE CONDITIONS, CHANGES and CHANGES-SUPPLEMENT of the GENERAL CONDITIONS as applicable." Compensation for contract modifications covering excess quantities often are accomplished through an equitable adjustment negotiated between the contracting officer and the contractor when these clauses are incorporated into the contract.

Term II, however, specifically states that the contract price and time adjustments will be made in accordance with the FAR and VAAR clauses "as applicable." Assuming, for the sake of argument, that $45.00 per cubic yard was intended to be a fixed price for any rock removal performed by the contractor, the FAR and VAAR clauses, including Differing Site Conditions and Changes, would be used only to negotiate quantity of additional or reduced rock removal and issues other than price. Term II, therefore, also is not clear in that the parties could have reached different, legitimate conclusions from the language of Term II, with the government expecting to negotiate all aspects of

equitable compensation for overruns or underuns, but the contractor expecting to be compensated at a fixed price of $45.00 per cubic yard as established in the proposal, which was accepted by the government.

In the instant case, the court has found the words of Terms I and II in the contract ambiguous and subject to more than one reasonable interpretation. As stated by the United States Supreme Court, “as between two reasonable and practical constructions of an ambiguous contractual provision . . . the provision should be construed less favorably to that party which selected the contractual language." United States v. Seckinger, 397 U.S. 203, 216, reh’g denied, 397 U.S. 1031 (1970). This doctrine of contra proferentem "'pushes the drafters toward improving contractual forms[,] and it saves contractors from hidden traps not of their own making.'" Fry Commc’ns, Inc. v. United States, 22 Cl. Ct. 497, 503 (1991) (quoting Sturm v. United States, 190 Ct. Cl. 691, 697, 421 F.2d 723, 727 (1970) (alteration in Fry)).

The United States Court of Appeals for the Federal Circuit has similarly stated:

> When a dispute arises as to the interpretation of a contract and the contractor’s interpretation is reasonable, we apply the rule of *contra proferentem*, which requires that ambiguous or unclear terms that are subject to more than one reasonable interpretation be construed against the party who drafted the document.

Turner Constr. Co. v. United States, 367 F.3d 1319, 1321 (Fed. Cir. 2004) (citing United States v. Turner Constr. Co., 819 F.2d 283, 286 (Fed. Cir. 1987)); see also Gardiner, Kamya & Assocs. v. Jackson, 467 F.3d at 1352; HPI/GSA-3C, LLC v. Perry, 364 F.3d 1327, 1334 (Fed. Cir. 2004).

In order to decide how to apply the doctrine of contra proferentem, after a court finds contract terms to be ambiguous and “susceptible to more than one reasonable interpretation,” the court must first determine whether the ambiguity is latent or patent. E.L. Hamm & Assocs., Inc. v. England, 379 F.3d 1334, 1342 (Fed. Cir. 2004) (“If an ambiguity exists, the next question is whether that ambiguity is patent.”); NVT Tech., Inc. v. United States, 370 F.3d 1153, 1162 (Fed. Cir. 2004); Metric Constructors, Inc. v. NASA, 169 F.3d at 751. “A patent ambiguity is one that is ‘obvious, gross, [or] glaring, so that plaintiff contractor had a duty to inquire about it at the start.’” NVT Tech., Inc. v. United States, 370 F.3d at 1162 (quoting H & M Moving, Inc. v. United States, 204 Ct. Cl. 696, 499 F.2d 660, 671 (1974)). “If an ambiguity is obvious [patent] and a bidder fails to inquire with regard to the provision, his interpretation will fail.” Id. (citing Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir. 1997)). “A contractor may not recover for a patent ambiguity.” E.L. Hamm & Assocs., Inc. v. England, 379 F.3d at 1342. “The doctrine of patent ambiguity is an exception to the general rule of *contra proferentem*, which the courts use to construe ambiguities against the drafter.” E.L. Hamm & Assocs., Inc. v. England, 379 F.3d at 1342 (citing Metric Constructors, Inc. v. NASA, 169 F.3d at 751 (emphasis in original)).

If, on the other hand, the ambiguity is latent or not obvious, the general rule of contra proferentem controls. See HPI/GSA-3C, LLC v. Perry, 364 F.3d at 1334. The doctrine of contra proferentum places the risk of latent ambiguity, lack of clarity, or absence of proper warning on the drafting party. However, it is "a 'rule of last resort' that 'is applied only where there is a genuine ambiguity and where, after examining the entire contract, the relation of the parties and the circumstances under which they executed the contract, the ambiguity remains unresolved.'" Gardiner, Kamya & Assocs. v. Jackson, 467 F.3d at 1352 (quoting Lewis v. United States, No. 34-78, 29 C.C.F. ¶ 82,470, at *7, 1982 WL 36718, at *7 (Ct. Cl. July 16, 1982) (decision adopted as the judgment of the United States Court of Claims at 231 Ct. Cl. 799, 800 (1982)).

In the case currently before the court, the government drafted the solicitation Terms I and II at issue. All the contractor did was fill in the blanks of cost per cubic yard and total cost. As discussed above, Terms I and II are subject to multiple reasonable interpretations. The contractor reasonably could have understood the solicitation Terms I and II, when read separately and together, to project a $45.00 cost per cubic yard, not only for the 100 cubic yard base quantity, but also as the cost per cubic yard in the event of quantity overruns. Likewise, defendant's interpretation of the contract terms is a plausible approach in the context of government contracting. After reviewing the record, the court concludes that the ambiguity was not patent and obvious. The contractor should not be barred from possible recovery. Given the multiple, possible, reasonable interpretations of the contract terms, partial summary judgment is denied. The next step is to examine "the relation of the parties and the circumstances under which they executed the contract," id., to resolve the ambiguity.

**CONCLUSION**

For the foregoing reasons, the cross-motions for partial summary judgment are denied. A status conference will be scheduled by separate order, after the parties have had an opportunity to consult with each other, to address how to proceed in this case.

**IT IS SO ORDERED.**

s/ Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**